**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE TAKATA AIRBAG LITIGATION | MDL Docket No. _____ |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE TRANSFER TO AND
CONSOLIDATION OR COORDINATION OF RELATED ACTIONS IN THE
SOUTHERN DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C. § 1407**

Craig Dunn, Pam Koehler, Zulmarie Rivera, Tru Value Auto Malls, LLC, David M. Jorgensen, Anna Marie Brechtell Flattmann, Robert Redfearn, Jr., Tasha R. Severio, Kenneth G. Decie, Gregory McCarthy, Nicole Peaslee, Karen Switkowski, Anthony D. Dark, Lemon Auto Sales, Inc., Nathan Bordewich, Kathleen Wilkinson, Haydee Masini, and Nancy Barnett ("Plaintiffs" and/or "Petitioners") respectfully submit this memorandum of law in support of their motion for transfer to and consolidation or coordination of the Related Actions (defined below) in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1407 and the Rules of Procedure of the Judicial Panel on Multidistrict Litigation (the "MDL Panel").

**BACKGROUND**

Since October 2014, five class actions have been filed alleging unlawful conduct involving airbags—manufactured by Defendant Takata[1] and installed in millions of vehicles in

---

[1] "Defendant Takata" refers to Takata Corporation, Takata Holdings, Inc., and Highland Industries, Inc.

the United States by Vehicle Manufacturer Defendants[2]—that cause serious bodily harm or death to vehicle occupants.[3]  Plaintiffs, all owners or lessees of vehicles recalled because they contain Takata airbags, allege that Takata's airbags, instead of protecting vehicle occupants from bodily injury during accidents, violently explode and eject lethal amounts of metal debris and shrapnel, causing serious injury and death.  To date, Takata airbags have caused at least four deaths and numerous horrific injuries, including maiming, loss of eyesight and hearing, and seizures.

On October 27, 2014, Petitioners filed the first action in the United States District Court for the Southern District of Florida, *Dunn, et al., v. Takata Corporation, et al.*, No. 14-cv-24009-JLK ("First-Filed Action").  The First-Filed Action was brought by two Florida residents, along with residents of seven additional states and Puerto Rico.  Plaintiffs brought claims on behalf of both nation-wide and state-wide classes, alleging violations of federal law and state warranty and consumer protection laws.

Three substantially similar putative class actions subsequently were filed in California and Michigan.  The second and third complaints were filed in the United States District Court for the Central District of California:  *Takeda, et al., v. Takata Corporation, et al.*, No. 2:14-cv-08324 (C.D. Ca. Oct. 27, 2014) and *Archer v. Takata Corporation*, No. 2:14-cv-08447 (C.D. Ca. Oct. 30, 2014).  A fourth complaint was filed in the United States District Court for the Eastern District of Michigan:  *Morris, et al., v. Takata Corporation, et al.*, No. 2:14-cv-14209 (E.D. Mich. Oct. 31, 2014).  A fifth complaint was filed in the United States District Court for the

---

[2] "Vehicle Manufacturer Defendants" refers to Honda Motor Co., Ltd., American Honda Motor Co., Inc., Bayerische Motoren Werke AG, BMW of North America, LLC, BMW Manufacturing Co., LLC, Ford Motor Company, Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., and Toyota Motor Engineering & Manufacturing North America, Inc. Vehicle Manufacturer Defendants, along with Defendant Takata, collectively are referred to as "Defendants."

[3] *Dunn, et al., v. Takata Corporation, et al.*, No. 14-24009 (S.D. Fla. Oct. 27, 2014); *Takeda, et al., v. Takata Corporation, et al.*, No. 14-08324 (C.D. Ca. Oct. 27, 2014); *Archer v. Takata Corporation*, No. 14-08447 (C.D. Ca. Oct. 30, 2014); and *Morris, et al., v. Takata Corporation, et al.*, No. 14-14209 (E.D. Mich. Oct. 31, 2014); *Bonet, et al., v. Takata Corporation*, No. 1:14-cv-24087 (S.D. Fla. Oct. 31, 2014).

Southern District of Florida:  *Bonet, et al., v. Takata Corporation, et al.*, No. 1:14-cv-24087 (S.D. Fla. Oct. 31, 2014).  The *Dunn*, *Takeda*, *Archer*, *Morris* and *Bonet* actions collectively are referred to as the "Related Actions."  *See* Schedule of Related Actions.

Plaintiffs in the Related Actions allege that Takata airbags, when deployed, explode and expel metal debris and shrapnel upon vehicle occupants.  Despite red flags raised in 2001 and 2004 involving Takata exploding airbags, and three more similar incidents in 2007, Defendant Honda did not first report the issue to federal safety regulator National Highway Transportation Safety Authority ("NHTSA") until November 2008.  Honda has issued several rounds of recalls since 2008, but the problem persists.  At least three incidents attributed to defective Takata airbags have occurred in Florida in the last six months, one resulting in the death of a Florida woman.  Several lawsuits filed by victims of these horrific accidents or their relatives are currently or were previously pending in Florida courts, including one case pending before Judge James Lawrence King, who is presently presiding over the First-Filed Action.  The full scope of the defects has yet to be determined.  More information about Takata's defective airbags continues to be uncovered daily.

Indeed, on October 22, 2014, NHTSA announced a new recall of nearly 8 million cars manufactured by ten different vehicle manufacturers that may be affected by Takata's defective airbags.  NHTSA strongly urged all owners or lessees of the recalled vehicles "to act immediately" on the recall notices to replace Takata airbags.  NHTSA reiterated that its recall message comes with "urgency" and that "[r]esponding to these recalls, whether old or new, is essential to personal safety."

Plaintiffs in the Related Actions allege similar misconduct on the part of Defendants. The Related Actions share factual questions relating to the Defendants' conduct and each seek to

certify either national and/or statewide classes under Rule 23 of the Federal Rules of Civil Procedure.  Centralization of this litigation will serve the interests of justice, judicial economy, and comity by eliminating duplicative discovery on the common factual questions and avoiding inconsistent pre-trial rulings.  As the Related Actions are still in their initial stages, potential inefficiencies can be avoided by immediate transfer and coordination or consolidation.

Given the substantial overlap among the Related Actions, transfer and consolidation or coordination pursuant to 28 U.S.C. § 1407 is the only means for efficient pre-trial proceedings. Plaintiffs submit that the Southern District of Florida is the most appropriate forum for transfer and consolidation or coordination of the Related Actions for the following reasons:

- The First-Filed Action was filed in the Southern District of Florida and is the most advanced of the five cases by far:

  o Judge King, who is presiding in the First-Filed Action, has already issued summonses to all of the domestic Defendants, and most of the Defendants have already been served with the first-filed complaint, including all of the domestic Defendants;

  o Judge King has also already held a preliminary hearing on Plaintiffs' motion for expedited discovery and has established an expedited briefing schedule and set a hearing date for the motion;

  o Judge King has scheduled a Rule 16 Scheduling Conference for December 8, 2014; and

  o The Plaintiffs in the First-Filed Action have begun seeking discovery of relevant facts by issuing a FOIA request to NHTSA;

- A large number of the accidents involving Takata airbags occurred in Florida, and several individual lawsuits relating to those accidents are pending in Florida courts, including one case that is currently pending before Judge King.  Indeed, NHTSA initially focused its investigation in Florida, among several other southern states, because many of the claims originated in Florida;

- The docket of the Southern District of Florida is conducive to the swift and efficient litigation of this matter, which concerns urgent threats to public safety. Indeed, the district is among the most efficient among all U.S. District Courts, moving cases to trial and final disposition faster than most other Districts; and

4

- The Southern District of Florida, and Judge King in particular, has the experience, capacity, and resources to efficiently and effectively manage this multidistrict litigation.

## ARGUMENT

### I.   TRANSFER AND CONSOLIDATION OF THE RELATED ACTIONS IS APPROPRIATE PURSUANT TO 28 U.S.C. § 1407

The Related Actions should be transferred and consolidated or coordinated for pretrial proceedings.  Pursuant to 28 U.S.C. § 1407(a), the MDL Panel may transfer and consolidate cases that meet three requirements: (1) the cases "involv[e] one or more common questions of fact;" (2) transfer and consolidation or coordination will further "the convenience of parties and witnesses;" and (3) transfer and consolidation or coordination "will promote the just and efficient conduct of [the] actions."   Here, transfer and consolidation to the Southern District of Florida satisfies each of these objectives.

#### A.    The Related Actions Involve Common Questions of Fact

The MDL Panel has consistently held that cases involving overlapping factual issues are particularly appropriate for transfer and consolidation or coordination.  The basic facts alleged in the Related Actions are virtually the same.

The Related Actions allege that Takata airbags were distributed to multiple vehicle manufacturers and installed in millions of vehicles in the United States during the last 13 years. They further allege that the Takata airbags violently explode, causing shrapnel and metal fragments to seriously injure or kill the vehicle occupants.  In addition, all of the Related Actions allege that the Takata airbags are now the subject of a massive NHTSA recall that affects millions of vehicles.  All five Related Actions similarly contend that Defendants were aware of the serious nature and extent of the defects and concealed their knowledge from the public in blatant disregard for public welfare and safety.  Moreover, they allege that the Defendants'

failure to address the airbag defects have resulted in severely diminished value of the affected vehicles.  Therefore, based on these overlapping factual issues, the Related Actions should be transferred and consolidated or coordinated in one judicial district.

### B.      Centralization Will Be More Convenient for the Parties and Witnesses

Centralization of these lawsuits will save Plaintiffs and Defendants the burden of having to prosecute and defend competing and overlapping class actions in multiple federal districts across the country.  In addition, because the Related Actions are premised on defects in the manufacturing of Takata airbags and seek legal relief grounded in common legal theories, they will require essentially the same discovery from each Defendant, including (i) specifications of Takata airbags; (ii) testing of Takata airbags or the identification of safety issues relating to Takata airbags; (iii) internal investigations conducted by or on behalf of Defendants relating to Takata airbags; (iv) customer complaints relating to Takata airbags; (v) Defendants' responses and communications with NHTSA with respect to Takata's airbags; (vi) tests or analyses conducted by Defendants to determine the safety of vehicles equipped with Takata airbags; and (vii) actions or steps taken by Defendants to address safety concerns related to the dangerous airbags.

Without consolidation, Plaintiffs would be required to issue, and Defendants would be required to respond to, multiple and duplicative discovery requests seeking the same information, and key witnesses would be required to sit for multiple and duplicative depositions.  Finally, in addition to being more convenient for the parties and witnesses, centralization will conserve judicial resources by permitting one judge to preside over the same claims involving the same parties, and to formulate a unified pre-trial program that minimizes the overall expense for all parties involved.  *Aftermarket Auto. Lighting*, 598 F. Supp. 2d 1366, 1367 (J.P.M.L. 2009) (consolidation would "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and

6

conserve the resources of the parties, their counsel and the judiciary"). Therefore, to accommodate the convenience of parties and witnesses, transfer and consolidation or coordination is appropriate.

### C. Centralization Will Promote the Just and Efficient Conduct of the Related Actions

Where multiple class actions have been initiated against multiple defendants who are engaged in substantially similar conduct, centralization serves the convenience of parties and witnesses and therefore promotes the just and efficient conduct of the litigation. *See, e.g., In re Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335-36 (J.P.M.L. 2009) (industry-wide centralization); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 398 F. Supp. 2d 1356, 1358 (J.P.M.L. 2005) (consolidating proceedings in fourteen actions and twenty-one potential tag-along actions); *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379, 1382 (J.P.M.L. 2011) (consolidating seventeen actions against at least twelve defendants in one district); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 626 F. Supp. 2d 1346, 1347 (J.P.M.L. 2009) (consolidating ten actions against numerous defendants in one district).

In addition, transfer and consolidation will promote the just and efficient conduct of the Related Actions because it will eliminate the possibility of conflicting pre-trial rulings. Plaintiffs assert many of the same claims—breaches of the implied warranty of merchantability, violations of consumer protection statutes, and common law fraudulent concealment claims—and inconsistent rulings could result if different courts address these claims. *See In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 2d 1377, 1378 (J.P.M.L. 2003) (noting that transfer is favored where there are overlapping legal issues among the various cases). Dispositive motions

and motions for class certification will require the resolution of essentially the same issues of fact and law.

The risk of inconsistent pre-trial rulings is particularly high here due to the presence of the current and potential number of competing and overlapping putative nationwide classes. *See In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) ("[It] is in the field of class action determinations in related multidistrict civil actions that the potential for conflicting, disorderly, chaotic judicial action is the greatest"); *see also In re Imagitas, Inc., Drivers' Privacy Prot. Act Litig.*, 486 F. Supp. 2d 1371, 1372 (J.P.M.L. 2007) (centralizing actions that contained "competing class allegations"); *In re IDT Corp. Calling Card Terms Litig.*, 278 F. Supp. 2d 1381, 1381 (J.P.M.L. 2003) (centralizing actions that involved "overlapping putative class actions").

It is highly likely that the number of Related Actions filed in the coming weeks, in multiple jurisdictions, will increase significantly. Ordering the transfer and consolidation at this early stage will allow these complex litigations to proceed in an efficient and coordinated manner. Efficiency is especially important here, where there are serious safety concerns regarding vehicles with Takata airbags.

## II.   THE RELATED CASES SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF FLORIDA

The Southern District of Florida is a proper choice for the transferee district because (i) the First-Filed Action was filed in the Southern District of Florida, which is the most advanced of the Related Actions by far, and two of the five Related Actions are currently in the Southern District of Florida; (ii) the Southern District of Florida has the strongest nexus to this litigation; (iii) the Southern District of Florida is well suited to handle the Related Actions in a timely

manner; and (iv) Judge King, presiding over the First-Filed Action, is already acquainted with the subject matter at issue and is exceptionally qualified and experienced with MDL litigation.

A.   **The First-Filed and Most Advanced Action is in the Southern District of Florida, and Two of the Five Related Actions Are Pending in the Southern District of Florida**

On October 27, 2014, the First-Filed Action (*Dunn*) was filed in the Southern District of Florida.  Since then, Plaintiffs have moved quickly to ensure that the case and the related urgent public safety issues move forward quickly and efficiently.

To that end, all of the domestic Defendants in the First-Filed Action have been served with the complaint.  In addition, on October 28, 2014, Plaintiffs filed a motion to expedite discovery, the day after the complaint was filed (the "Discovery Motion").  (ECF No. 5).  The Discovery Motion seeks the immediate production of certain documents in order to determine whether Defendants have taken sufficient steps to protect public welfare and safety, whether Defendants' vehicles containing Takata airbags are safe to drive, and whether it is necessary to ask the Court to impose certain requirements upon Defendants in the form of an injunction.  On October 30, 2014, just two days after the Discovery Motion was filed, an initial hearing on the Discovery Motion was held.  The Court has established an expedited briefing schedule for the Discovery Motion and arguments on the Discovery Motion are scheduled for December 8, 2014.

Judge King has also scheduled a Rule 16 Scheduling Conference for December 8th to discuss and determine the progression of the case, certain discovery matters, and a proposed discovery schedule.  *See Dunn*, ECF No. 14.  Furthermore, on October 31, 2014, Plaintiffs issued a FOIA request to NHTSA, requesting that NHTSA provide all documents relating to NHTSA's investigations related to Takata airbags.  To date, none of other Related Actions have filed similar discovery motions nor have any conferences been scheduled or held.  Thus, the First-Filed Action is well-positioned to be the first to receive important and highly relevant discovery

that is also relevant to other the Related Actions.  Transfer and consolidation of the Related Actions to the Southern District of Florida, where the First-Filed Action is pending, will allow the other Related Actions to benefit from the expedited discovery and efficiently coordinate on further discovery that may will needed in both the short and long term.  Thus, because the First-Filed Action has advanced far beyond the other Related Actions, the Southern District of Florida is the appropriate jurisdiction for transfer.

In addition, the number of related cases pending in a district is a factor the MDL Panel has considered when determining the transferee court.  *See, e.g., In re Nat'l Arbitration Forum Antitrust Litig.*, 682 F. Supp. 2d 1343, 1346 (J.P.M.L. 2010) (relying on majority of actions were pending in district as a reason to select district as the transferee court). Here, two Related Actions are pending in the Southern District of Florida, which is currently equal to the two Related Actions in the Central District of California and more than the one Related Action in the Eastern District of Michigan.

**B.     The Southern District of Florida has a Strong Nexus to the Litigation**

The Southern District of Florida has numerous compelling geographic and site-of-injury links to this litigation.  First, NHTSA has specifically identified vehicle owners in Florida and the Gulf region as especially affected by the airbag-related dangers and recalls.  Second, the Office of Defects Investigation and NHTSA are both investigating Takata airbags based on six complaints of improper deployment or rupture that occurred in the high heat and humid climates of Florida and Puerto Rico.  Third, two of the named Plaintiffs in the First-Filed Action reside in Florida (Craig Dunn and Pam Koehler).  Fourth, at least one death (Hien Tran) and five injuries attributable to Takata airbags occurred in Florida.  The death and at least three injuries occurred in the last sixth months.  Fifth, and relatedly, the Florida Highway Patrol's investigation into

Hien Tran's death continues.  Finally, at least three personal injury lawsuits, one of which is in front of Judge King, have been filed in Florida.[4]

Such considerations are an important factor in analyzing the appropriate transferee court. *See In re Oil Spill By The Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 731 F. Supp. 2d 1352 (J.P.M.L. 2010) (centralizing cases in district closest to the "geographic and psychological 'center of gravity' in this docket").  Based on the strong nexus of the unlawful conduct to Florida, the Southern District of Florida is the appropriate jurisdiction for transfer.

### C.   Judge James Lawrence King in the Southern District of Florida is Well-Qualified and Experienced in MDL Litigation and the Related Actions

As evidenced by the MDL Panel's selection of the Southern District of Florida as the transferee court in numerous MDL actions, the judges in the Southern District of Florida are exceptionally qualified and experienced with MDL litigation. The MDL Panel has consistently acknowledged that MDL experience is an important factor in deciding upon a transferee court. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 626 F. Supp. 2d 1346, 1347 (J.P.M.L. 2009) (finding that centralization in the chosen district permits the Panel to "effect the section 1407 assignment to a judge who has extensive experience in multidistrict litigation as well as the ability and temperament to steer this complex litigation on a steady and expeditious course").

District Court Judge James Lawrence King, who currently presides over the First-Filed Action, has experience presiding over MDL proceedings, including *In re Checking Account Overdraft Litigation* (MDL No. 2036) since June 2009.  The MDL Panel has praised Judge King's handling of the large and complex matter:

[4] *See Nunez v. TK Holdings, Inc., et al.*, Case No. 1:14-cv-23944 (S.D. Fla. Oct. 23, 2014) (King, J.); *Burdick et al. v. American Honda Motor Co., et al.*, No. 2014 CA 001397 (Fla. Lake County Ct. July 11, 2014); *Gravlin, et ano. v. Mazda Motor of America, Inc. d/b/a Mazda North American Operations, et al.*, Case No. CACE-14-013205 (Fla. Broward County July 8, 2014).

> The transferee judge, the Honorable James Lawrence King, has been ably handling the many challenges posed by this continued influx of actions and new parties. He has organized the actions into multiple groups, and established, for each group, a detailed schedule governing the conduct of all pretrial events. The groups are in various stages of discovery, and each action has been set for trial (for those actions that can be tried in the transferee district). The judge has issued multiple substantive and thoughtful rulings on a variety of pretrial matters, including rulings on motions to dismiss, to compel arbitration, and for class certification.   The litigation, in other words, is quite mature.

*In re: Checking Account Overdraft Litig.*, 818 F. Supp. 2d 1373, 1373 (J.P.M.L. 2011).

*In re Checking Account Overdraft Litigation* includes only eleven remaining pending actions, down from a historical total of one hundred actions, as of October 15, 2014.[5]  Further, the *In re Checking Account Overdraft Litigation* MDL is winding down, with certain final distributions being recently approved by Judge King.

In addition, Judge King is familiar with the issues relevant to the Related Actions, as he also presides over *Nunez v. TK Holdings, Inc., et al.*, Case No. 1:14-cv-23944 (S.D. Fla. Oct. 23, 2014), a personal injury suit involving the Takata airbag defect, which makes him particularly well-positioned to handle an MDL concerning the Related Actions.  Finally, Judge King has taken an early and active role in the First-Filed Action, holding a hearing on the Discovery Motion just days after the complaint was filed, establishing a briefing schedule and date for argument on the Discovery Motion, and setting a date for a Rule 16 Scheduling Conference. Therefore, based on the experience of the Southern District of Florida in MDL actions, and the specialized experience of Judge King, the Southern District of Florida is the appropriate transferee forum.

---

[5] *Id.*

### D.   Docket Conditions in the Southern District of Florida Are More Favorable Than in Other Districts

According to the most recent Federal Court Management Statistics, the Southern District of Florida ranks as the top district in the entire country in the most significant measure of docket conditions:[6] the median time from filing to disposition in civil cases.[7]   The median time from filing to disposition currently stands at 4.6 months, and has not exceeded 5 months for the past five years.   Additionally, the Southern District of Florida also stands near the top of the list for median time from filing to trial in civil cases, ranking fourth in that measure with a median time of 16.4 months.   The Southern District of Florida, therefore, clearly "enjoys general docket conditions conducive to the efficient resolution of this litigation."   *In re: Skechers Toning Shoe Products Liab. Litig.*, 831 F. Supp. 2d 1367, 1370 (U.S. Jud. Pan. Mult. Lit. 2011).   Here, establishing the MDL in an efficient District Court is of paramount importance due to the urgent public safety concerns that are at issue in the Related Actions.

As the Panel has previously recognized, the Southern District of Florida is "readily accessible."   *In re Enfamil Lipil Marketing & Sales Practices Litig.*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011).   Also, the judges in the Southern District of Florida are exceptionally qualified and experienced with complex litigation.   The MDL Panel has consistently acknowledged that such experience is a key factor in deciding upon a transferee court.   *See In re Health Management Associates, Inc. Qui Tam Litig. (No. II)*, MDL No. 2524, 2014 WL 1338479, *2 (J.P.M.L. Apr. 3, 2014) (transferring actions to an "experienced jurist"); *In re Biomet M2a Magnum Hip Implant Products Liab. Litig.*, 896 F. Supp. 2d 1339, 1340-41 (J.P.M.L. 2012)

---

[6]   The significance of this statistic is well established.  *See In re Nat'l Student Mktg. Litig.*, 368 F. Supp. 1311, 1318 (J.P.M.L. 1972) (noting the importance of median time to disposition when comparing districts).

[7]   *See* Federal Court Management Statistics for Southern District of Florida, December 2013 (http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2013/district-fcms-profiles-december-2013.pdf&page=92).

(transferring actions to a judge "who is well-versed in the nuances of complex, multidistrict litigation").

The advantages of establishing the MDL in the Southern District of Florida are magnified when compared to case management metrics in the other potential MDL jurisdictions, the Central District of California and the Eastern District of Michigan. For instance, the Central District of California and Eastern District of Michigan are more heavily burdened and therefore less efficient than the Southern District of Florida. Compared to the Southern District of Florida's 4.6 month median time from filing to disposition, it takes 5.6 months in the Central District of California and 8.5 months in the Eastern District of Michigan. The difference is even greater for median time from filing to trial, with it taking 16.4 months in the Southern District of Florida, versus 21.3 months in the Central District of California and 28.4 months in the Eastern District of Michigan.[8]

Another "especially useful basis for comparing the various court dockets" is the percentage of cases over 3 years old. D. Herr, *Multidistrict Litigation Manual: Practice Before the Judicial Panel on Multidistrict Litigation*, § 6:17 at 210-11 (2009). Here again, the Southern District of Florida is by far the more efficient district with only 2.2% of its cases pending for three years or more. This is particularly impressive when measured against the Central District of California, where almost three-times as many cases (5.9%) have been pending three years or more, and the Eastern District of Michigan, where about four times as many cases (8.7%) have

---

[8] *See* Federal Court Management Statistics for Central District of California, June 2014 (http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2014/district-fcms-profiles-june-2014.pdf&page=68); Federal Court Management Statistics for Southern District of Florida, June 2014 (http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2014/district-fcms-profiles-june-2014.pdf&page=92); Federal Court Management Statistics for Eastern District of Michigan, June 2014 (http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2014/district-fcms-profiles-june-2014.pdf&page=40).

been pending for three years or more.  One possible explanation for the other districts' relative inefficiency—and another factor militating in favor of the Southern District of Florida—is that, as of June 30, 2014, each judge in the Southern District of Florida has, on average, 390 pending actions, whereas each judge in the Central District of California has an average of 473 pending actions, and each judge in the Eastern District of Michigan has an average of 450 pending actions.

The Southern District of Florida is also home to far fewer MDL actions (only seven) than the Central District of California (16),[9] which independently supports selecting the Southern District of Florida.  *See In re Loestrin 24 Fe Antitrust Litig.*, MDL No. 2472, 2013 WL 5505369, *1 (J.P.M.L. 2013) (noting that "only one other multidistrict litigation [was] pending" in the district as a reason for selecting transferee district); *In re Subway Footlong Sandwich Marketing & Sales Litig.*, 949 F. Supp. 2d 1369, 1370 (J.P.M.L 2013) (same for a district with no pending MDLs).  Moreover, while there are only three MDL cases currently pending before the Eastern District of Michigan,[10] Judge Battani, who is assigned to the *Morris* Related Action in the Eastern District of Michigan, currently presides over the sprawling MDL *In re Automotive Parts Antitrust Litigation* (MDL 2311), which had 160 actions pending as of October 15, 2014.[11]

Establishing the MDL in a District Court with favorable docket conditions and a proven track record of efficiently managing cases is crucial under these circumstances, where there are public welfare and safety concerns and injunctive relief may be necessary.  The proficiency of the Southern District of Florida to address the urgent concerns related to the safety of Takata

---

[9] *See* MDL Statistics Report - Distribution of Pending MDL Dockets as of October 15th, 2014 (http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-October-15-2014.pdf).

[10] *Id.*

[11] *Id.*

airbags is further demonstrated by the expedited manner in which Judge King has addressed the *Dunn* Plaintiffs' Discovery Motion.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully requests that the MDL Panel transfer and consolidate or coordinate the Related Actions to the Southern District of Florida.

Date:  November 3, 2014                    Respectfully submitted,

/s/  Peter Prieto

**PODHURST ORSECK, P.A.**
Peter Prieto
John Gravante, III
Matthew P. Weinshall
25 West Flagler Street, Suite 800
Miami, Florida 33130
(305) 358-2800

**LABATON SUCHAROW LLP**
Lawrence A. Sucharow
Martis Alex
Michael W. Stocker
Gregory S. Asciolla
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
lsucharow@labaton.com
malex@labaton.com
mstocker@labaton.com
gasciolla@labaton.com

**BARON & BUDD, P.C.**
Roland Tellis
Mark Pifko
David Fernandes
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone:  (818)839-2333
Facsimile:  (818)986-9698

**BARON & BUDD, P.C.**
J. Burton LeBlanc
9015 Bluebonnet Blvd

Baton Rouge, LA 70810
Tel: 225- 761-6463
Facsimile: 225-927-5449

***Counsel for Craig Dunn, Pam
Koehler, Zulmarie Rivera, Tru Value
Auto Malls, LLC, David M.
Jorgensen, Anna Marie Brechtell
Flattmann, Robert Redfearn, Jr.,
Tasha R. Severio, Kenneth G. Decie,
Gregory McCarthy, Nicole Peaslee,
Karen Switkowski, Anthony D. Dark,
Lemon Auto Sales, Inc., Nathan
Bordewich, Kathleen Wilkinson,
Haydee Masini, and Nancy Barnett***