# EXHIBIT A

ACCO,(ASx),DISCOVERY

# UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:14-cv-08324-CBM-AS

David Takeda et al v. Takata Corporation et al
Assigned to: Judge Consuelo B. Marshall
Referred to: Magistrate Judge Alka Sagar
Demand: $5,000,000
Cause: 15:2301 Magnuson-Moss Warranty Act

Date Filed: 10/27/2014
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**David Takeda**
*individually and on behalf of all others similarly situated*

represented by **David Brian Fernandes , Jr**
Baron and Budd PC
15910 Ventura Blvd Suite 1600
Encino, CA 91436
818-839-2333
Fax: 818-986-9698
Email: dfernandes@baronbudd.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark P Pifko**
Baron and Budd PC
15910 Ventura Boulevard Suite 1600
Encino, CA 91436
818-839-2333
Fax: 818-986-9698
Email: MPifko@baronbudd.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roland K Tellis**
Baron and Budd PC
15910 Ventura Boulevard Suite 1600
Encino, CA 91436
818-839-2333
Fax: 818-986-9698
Email: rtellis@baronbudd.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Teresa Lemke**
*individually and on behalf of all others similarly situated*

represented by **David Brian Fernandes , Jr**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Mark P Pifko**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roland K Tellis**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**William Dougherty**
*individually and on behalf of all others*
*similarly situated*

represented by **David Brian Fernandes , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark P Pifko**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roland K Tellis**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Coleman Haklar**
*individually and on behalf of all others*
*similarly situated*

represented by **David Brian Fernandes , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark P Pifko**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roland K Tellis**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Susan Nattrass**
*individually and on behalf of all others*
*similarly situated*

represented by **David Brian Fernandes , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark P Pifko**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roland K Tellis**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Takata Cororation**

**Defendant**

**TK Holdings, Inc.**

**Defendant**

**Highland Industries, Inc.**

**Defendant**

**Honda Motor Co., Ltd.**

**Defendant**

**American Honda Motor Co., Inc.**

**Defendant**

**Bayerische Motoren Werke AG**

**Defendant**

**BMW of North America, LLC**

**Defendant**

**BMW Manufacturing Co., LLC**

**Defendant**

**Nissan Motor Co., Ltd.**

**Defendant**

**Nissan North America, Inc.**

**Defendant**

**Toyota Motor Corporation**

**Defendant**

**Toyota Motor Sales, U.S.A., Inc.**

**Defendant**

Toyota Motor Engineering &
Manufacturing North America, Inc.

| Date Filed | # | Docket Text |
|---|---|---|
| 10/27/2014 | 1 | COMPLAINT Receipt No: 0973-14686524 - Fee: $400, filed by Plaintiffs Teresa Lemke, David Takeda, William Dougherty, Coleman Haklar, Susan Nattrass. (Attorney Roland K Tellis added to party William Dougherty(pty:pla), Attorney Roland K Tellis added to party Coleman Haklar(pty:pla), Attorney Roland K Tellis added to party Teresa Lemke(pty:pla), Attorney Roland K Tellis added to party Susan Nattrass(pty:pla), Attorney Roland K Tellis added to party David Takeda(pty:pla))(Tellis, Roland) (Entered: 10/27/2014) |
| 10/27/2014 | 2 | CIVIL COVER SHEET filed by Plaintiffs William Dougherty, Coleman Haklar, Teresa Lemke, Susan Nattrass, David Takeda. (Tellis, Roland) (Entered: 10/27/2014) |
| 10/27/2014 | 3 | CIVIL COVER SHEET filed by Plaintiffs William Dougherty, Coleman Haklar, Teresa Lemke, Susan Nattrass, David Takeda. (Tellis, Roland) (Entered: 10/27/2014) |
| 10/28/2014 | 4 | Request for Clerk to Issue Summons on Civil Cover Sheet (CV-71) 3 , Complaint (Attorney Civil Case Opening), 1 filed by Plaintiffs William Dougherty, Coleman Haklar, Teresa Lemke, Susan Nattrass, David Takeda. (Tellis, Roland) (Entered: 10/28/2014) |
| 10/28/2014 | 5 | NOTICE of Interested Parties filed by Plaintiffs All Plaintiffs, identifying Plaintiffs: David, Takeda, Teresa Lemke, William Dougherty, Coleman Haklar, Susan Nattrass and Defendants: Takata Corporation, TK Holdings, Inc., Highland Industries, Inc., Honda Motor Co., Ltd., American Honda Motor Co., Inc., Bayerische Motoren Werke AG, BMW of North America, LLC, BMW Manufacturing Co., LLC, Nissan Motor Co., Ltd., Nissan North America, Inc., Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., and Toyota Motor Engineering & Manufacturing North America, Inc.. (Tellis, Roland) (Entered: 10/28/2014) |
| 10/28/2014 | 6 | NOTICE OF ASSIGNMENT to District Judge Consuelo B. Marshall and Magistrate Judge Alka Sagar. (ghap) (Entered: 10/28/2014) |
| 10/28/2014 | 7 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening), 1 as to Defendants American Honda Motor Co., Inc., BMW Manufacturing Co., LLC, BMW of North America, LLC, Bayerische Motoren Werke AG, Highland Industries, Inc., Honda Motor Co., Ltd., Nissan Motor Co., Ltd., Nissan North America, Inc., TK Holdings, Inc., Takata Cororation, Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Sales, U.S.A., Inc. (ghap) (Entered: 10/28/2014) |
| 10/28/2014 | 8 | NOTICE OF DEFICIENCIES in Attorney Case Opening RE: Civil Cover Sheet (CV-71) 2 . The following error(s) was found: Other error(s) with document(s): Incorrect event selected. Correct event to be used is Certificate/Notice of Interested Parties. (ghap) (Entered: 10/28/2014) |

| 10/29/2014 | 9 | STANDING ORDER by Judge Consuelo B. Marshall. (rne) (Entered: 10/29/2014) |

1  Roland Tellis (SBN 186269)
   rtellis@baronbudd.com
2  Mark Pifko (SBN 228412)
   mpifko@baronbudd.com
3  David Fernandes (SBN 280944)
   dfernandes@baronbudd.com
4  **BARON & BUDD, P.C.**
   15910 Ventura Boulevard, Suite 1600
5  Encino, California  91436
   Telephone:   (818) 839-2333
6  Facsimile:   (818) 986-9698

7

8
   *Additional Counsel Identified Below*
9  Attorneys for Plaintiffs

10         **UNITED STATES DISTRICT COURT**
           **CENTRAL DISTRICT OF CALIFORNIA**
11

12  DAVID TAKEDA, TERESA LEMKE,          Case No.:
    WILLIAM DOUGHERTY, COLEMAN
13  HAKLAR, SUSAN NATTRASS               **CLASS ACTION COMPLAINT**
    individually and on behalf of all others
14  similarly situated,                  **JURY TRIAL DEMANDED**

15              Plaintiffs,

16         vs.

17  TAKATA CORPORATION, TK
    HOLDINGS, INC., HIGHLAND
18  INDUSTRIES, INC., HONDA MOTOR
    CO., LTD., AMERICAN HONDA
19  MOTOR CO., INC., BAYERISCHE
    MOTOREN WERKE AG, BMW OF
20  NORTH AMERICA, LLC, BMW
    MANUFACTURING CO., LLC, NISSAN
21  MOTOR CO., LTD., NISSAN NORTH
    AMERICA, INC., TOYOTA MOTOR
22  CORPORATION, TOYOTA MOTOR
    SALES, U.S.A., INC., AND TOYOTA
23  MOTOR ENGINEERING &
    MANUFACTURING NORTH
24  AMERICA, INC.,

25

26              Defendant.

27

28

_____
                  COMPLAINT

1    Plaintiffs David Takeda, Teresa Lemke, William Dougherty, Coleman Haklar, and

2    Susan Nattrass (collectively, "Plaintiffs"), individually and on behalf of the other

3    members of the below-defined nationwide class and statewide class they respectively

4    seek to represent (collectively, the "Class," unless otherwise identified herein), for their

5    Class Action Complaint (the "Complaint") alleged against Defendants (defined below),

6    upon personal knowledge as to themselves and their own acts, and as to all other matters

7    upon information and belief, based upon the investigation made by the undersigned

8    attorneys, as follows:

9                              **NATURE OF THE CASE**

10    1.    Every day, more than 100 drivers and passengers of motor vehicles are

11    injured or killed in car accidents.  When people operate a motor vehicle or ride in one as

12    a passenger, they trust and rely on the manufacturers of those motor vehicles to make

13    those vehicles safe.  And one of the central safety features of any motor vehicle is the

14    airbag.  Remarkably, Defendants Takata Corporation, TK Holdings, Inc. and Highland

15    Industries, Inc. (collectively, "Takata") designed, manufactured, tested, marketed

16    millions of defective airbags which were distributed and sold to Defendants Honda

17    Motor Co., Ltd., American Honda Motor Co., Inc., Bayerische Motoren Werke AG,

18    ("BMW AG"), BMW of North America, LLC, BMW Manufacturing Co., LLC, Nissan

19    Motor Co., Ltd., Nissan North America, Inc., Toyota Motor Corporation, Toyota Motor

20    Sales, U.S.A., Inc., and Toyota Motor Engineering & Manufacturing North America,

21    Inc. (collectively referred to as the "Vehicle Manufacturer Defendants").  As alleged in

22    Plaintiffs' Complaint, Takata and the Vehicle Manufacturer Defendants (collectively,

23    "Defendants") concealed their knowledge of the nature and extent of the defects in the

24    Takata airbags from the public, in blatant disregard for public welfare and safety.

25    2.    Plaintiffs bring this action on behalf of themselves and on behalf of all

26    persons similarly situated who purchased or leased Defective Vehicles manufactured,

27    distributed, or sold by the Vehicle Manufacturer Defendants that contain airbags

28    manufactured by Takata, for claims under federal and state laws.  As used in this

Complaint, "Defective Vehicles" refers to all vehicles purchased or leased in the United States that have airbags manufactured by Takata and have been subject to an airbag-related warning or recall, including, but not limited to, the following vehicles: 2001 - 2007 Honda Accord; 2001 -2005 Honda Civic; 2002 – 2006 Honda CR-V; 2003 – 2011 Honda Element; 2002 – 2004 Honda Odyssey; 2003 – 2007 Honda Pilot; 2006 Honda Ridgeline; 2003 – 2006 Acura MDX; 2002 – 2003 Acura TL/CL; 2005 Acura RL; 2000 – 2005 BMW 3 Series Sedan; 2000 – 2006 BMW 3 Series Coupe; 2000 – 2005 BMW 3 Series Sports Wagon; 2000 – 2006 BMW 3 Series Convertible; 2001 – 2006 BMW M3 Coupe; 2001 – 2006 BMW M3 Convertible; 2001 – 2003 Nissan Maxima; 2001 – 2004 Nissan Pathfinder; 2002 – 2004 Nissan Sentra; 2001 – 2004 Infiniti I30/I35; 2002 – 2003 Infiniti QX4; 2003 – 2005 Infiniti FX35/FX45; 2002 – 2004 Lexus SC; 2002 – 2005 Toyota Corolla; 2003 – 2005 Toyota Corolla Matrix; 2002 – 2005 Toyota Sequoia; and 2003 – 2005 Toyota Tundra. The term "Defective Vehicles" includes all vehicles purchased or leased in the United States that have airbags manufactured by Defendant Takata and are recalled at any point after the filing date of this Complaint for a reason relating to airbag defects.

3. Other vehicles that have been recalled because they have airbags manufactured by Defendant Takata include the following: 2004 Ford Ranger; 2005 – 2006 Ford GT; 2005 – 2007 Ford Mustang; 2003 – 2008 Dodge Ram 1500; 2005 – 2008 Dodge Ram 2500; 2006 – 2008 Dodge Ram 3500; 2006 – 2008 Dodge Ram 4500; 2008 Dodge Ram 5500; 2005 – 2008 Dodge Durango; 2005 – 2008 Dodge Dakota; 2005 – 2008 Chrysler 300; 2007 – 2008 Chrysler Aspen; 2003 – 2005 Pontiac Vibe; 2005 Saab 9-2x; 2003 – 2007 Mazda6; 2006 – 2007 MazdaSpeed6; 2004 – 2008 Mazda RX-8; 2004 – 2005 Mazda MPV; 2004 Mazda B-Series Truck; 2004 – 2005 Mitsubishi Lancer; 2006 – 2007 Mitsubishi Raider; 2003 – 2005 Subaru Baja; 2003 – 2005 Subaru Outback; 2003 – 2005 Subaru Legacy; 2004 – 2005 Subaru Impreza.

4. Airbags are meant to inflate rapidly during an automobile collision. The airbag's purpose is to cushion occupants during a crash and provide protection to their

bodies when they strike objects in the vehicle, such as the steering wheel, dash board, or windshield.

5.      The Defective Vehicles contain airbags manufactured by Defendant Takata that, instead of protecting vehicle occupants from bodily injury during accidents, violently explode and expel vehicle occupants with lethal amounts of metal debris and shrapnel.

6.      The manufacturing defect in Takata's airbags dates back to at least April 2000, when, according to one recall notice, some Takata airbags produced between April 2000 and September 2002 contained manufacturing defects.  Takata became aware of the defect in at least as early as 2001 when the first recall was issued relating to the exploding Takata airbags in Isuzu vehicles.

7.      In 2004, a Takata airbag in a Honda Accord exploded in Alabama, shooting out metal shrapnel and severely injuring the car's driver.  Honda and Takata deemed the incident "an anomaly" and did nothing about it.  Honda did not issue a recall. Neither Honda nor Takata sought the involvement of federal safety regulators.  In fact, Honda did not tell regulators about this event until an inquiry into its 2009 recall.

8.      The serious danger posed by the lethal Takata airbags was not disclosed to U.S. safety regulators until 2008, despite red flags raised by the 2001 Isuzu and 2004 Honda exploding airbag incidents.  Indeed, Honda received three additional reports of airbag rupture incidents in 2007, but never issued recalls or told U.S. safety regulators that the incidents involved exploding airbags.  Finally, in November 2008, Honda informed U.S. authorities that it had a problem with some of the Takata airbags installed in its vehicles.  However, at that time Honda recalled only 4000 Accords and Civics.

9.      In April 2009, six months after the limited 2008 recall, a Takata airbag in Florida resident Jennifer Griffin's Honda Civic exploded after a minor accident.  The lethal explosion sent a two-inch piece of shrapnel from the airbag flying into Ms. Griffin's neck.  Although Ms. Griffin survive, when highway troopers found her, blood was gushing from a gash in her neck.  Ms. Griffin's car was not part of the 2008 recall.

10.     In May 2009, a month after Ms. Griffin's accident, 18-year-old Ashley Parham was killed while driving a 2001 Honda Accord when the Takata airbag in her car exploded after her car bumped into another car in a parking lot.  While she apparently survived her accident, the metal shrapnel that shot out of the exploding Takata airbag sliced open her carotid artery and she bled to death.

11.     Ms. Parham's car was not one of those recalled six months earlier by Honda.

12.     It was not until two months after Ms. Parham's death that Honda expanded its 2008 recall to about 400,000 vehicles, summoning back additional 2001 and 2002 Acura, Civic, and Accord models, including the model driven by Ms. Parham.

13.     In recent incidents, first responders have been baffled by the fact that victims of apparently minor accidents suffered injuries more consistent with being shot or stabbed repeatedly.

14.     For example, around July 2014, South Florida resident Claribel Nunez was involved in a crash while driving her 2001 Honda Civic. While she survived the automobile accident, she was badly injured when a chunk of metal exploded from her car's Takata airbag into her forehead. She survived, but now suffers from headaches, nausea, and loss of vision.

15.     On September 29, 2014, Florida resident Hien Tran died four days after her 2001 Honda Accord struck another car in Orlando and the Takata airbag exploded, sending shrapnel into her neck.  The medical examiner stated that the shrapnel tore through the airbag, hitting Ms. Tran and causing "stab-type wounds" and cutting her trachea.  Indeed, her death was initially investigated as a homicide by detectives.  A week after she died she received a letter in the mail from Honda urging her to get her car fixed because of faulty airbags that could explode.

16.     Despite this shocking record, both Takata and Honda have been slow to report the full extent of the danger to drivers and passengers and failed to issue appropriate recalls.  Both Honda and Takata provided contradictory and inconsistent

1   explanations to regulators for the defects in Takata's airbags, leading to more confusion

2   and delay.  Indeed, the danger of exploding airbags and the number of vehicles affected

3   was not disclosed for years after it became apparent there was a potentially lethal

4   problem.  Instead, Takata and Honda repeatedly failed to fully investigate the problem

5   and issue proper recalls, allowing the problem to proliferate and cause numerous injuries

6   and at least four deaths over the last 13 years.

7        17.    It was not until 2013, four years after Honda first reported the problem to

8   U.S. regulators that a more detailed recounting of Takata's safety failures was revealed,

9   and more information about Takata's defective airbags continues to be uncovered today.

10        18.    Takata's own airbag manufacturing plants did not abide by Takata's

11   internal safety rules.  In 2002, Takata's airbag manufacturing plant in Mexico allowed a

12   defect rate that was "six to eight times above" acceptable limits, or roughly 60 to 80

13   defective parts for every 1 million airbag inflators shipped.

14        19.    Equally troubling, Takata misled at least one other car manufacturer to

15   believe that its vehicles were not affected by Takata's defective airbags.  In 2010, Takata

16   affirmatively assured BMW that its vehicles were not affected because BMW's airbags

17   were manufactured on a different production schedule from Honda's.  It wasn't until

18   2013 that Takata finally admitted that BMW's airbags were in fact at risk of explosion.

19   Takata's actions thus aided in the delay of other car manufacturers issuing recalls on

20   their vehicles with Takata airbags.

21        20.    However, the other Vehicle Manufacturer Defendants were on notice as

22   early as 2008 when Honda first notified regulators of a problem with its Takata airbags.

23   Other car manufacturers with Takata airbags in their vehicles knew or should have

24   known at that time that there might be a safety problem with their airbags and should

25   have launched their own investigations and notified customers.

26        21.    In June 2014, NHTSA announced that BMW, Chrysler, Ford, Honda,

27   Mazda, Nissan, and Toyota were conducting limited regional recalls to address a

28   possible safety defect involving Takata brand airbag inflators.  The action was

1    influenced by a NHTSA investigation into six reports of airbag inflator ruptures, all of

2    which occurred in Florida and Puerto Rico.

3        22.    To date, over 14 million vehicles with Takata's airbags have been recalled

4    worldwide, and there are reports that additional vehicles that have not yet been disclosed

5    by the Defendants could join the list of recalls.  The large majority of those recalls have

6    come only within the last year despite the fact that many of the vehicles were

7    manufactured with a potentially defective and dangerous airbag over a decade ago.

8        23.    U.S. federal prosecutors have taken notice of Takata's failure to properly

9    report the problem with its airbags and are trying to determine whether Takata misled

10    U.S. regulators about the number of defective airbags it sold to automakers.

11        24.    As a result of Takata's and the Vehicle Manufacturer Defendants'

12    misconduct, Plaintiffs and the Classes were harmed and suffered actual damages in that

13    the Defective Vehicles have potentially deadly airbags that pose an ongoing threat to

14    drivers and passengers and have drastically diminished the value of the cars in which

15    they are installed.  Plaintiffs and the Classes did not receive the benefit of their bargain

16    as purchasers and lessees received vehicles that were of a lesser standard, grade, and

17    quality than represented, and did not receive vehicles that met ordinary and reasonable

18    consumer expectations.  Class Members did not receive vehicles that would reliably

19    operate with reasonable safety, and that would not place drivers and occupants in danger

20    of encountering an ongoing and undisclosed risk of harm, which could have been

21    avoided.  A vehicle purchased or leased under the reasonable assumption that it is "safe"

22    as advertised is worth more than a car—such as the Defective Vehicles—that is known

23    to contain a Takata airbag.  All purchasers of the Defective Vehicles overpaid for their

24    vehicles.  Furthermore, the public disclosure of the defective Takata airbags has caused

25    the value of the Defective Vehicles to materially diminish.  Purchasers or lessees of the

26    Defective Vehicles paid more, either through a higher purchase price or higher lease

27    payments, than they would have had the defects been disclosed.

28

25.     Worse still, the current recalls have done little to protect owners and lessees of Defective Vehicles from the urgent and ongoing threat posed by Takata airbags because there are not enough new airbags to replace the millions of recalled airbags.

26.     All owners or lessees of the Defective Vehicles have been strongly urged by the National Highway Traffic Safety Administration ("NHTSA") "to act immediately" on the recall notices to replace Takata airbags.  The NHTSA reiterated that its recall message comes with "urgency" and that "[r]esponding to these recalls, whether old or new, is essential to personal safety."

27.     However, Takata is unable to manufacture enough new, safe airbags quickly enough to replace the faulty airbags in the nearly eight million vehicles that are the subject of the most recent recall.  "There's simply not enough parts to repair every single recalled car immediately" said Chris Martin, a spokesman for Honda.[1]

28.     Even if there were enough airbags, dealers are unable to keep up with the volume of customers rushing to get their Takata airbags replaced.  Some dealers have reported receiving up to 900 calls per day about the recalls and are telling customers that they may have to wait months before airbags can be replaced.

29.     Instead of replacing the airbags, some dealers are either disabling airbags and leaving customers with vehicles that are unsafe to drive, or are advising customers to not drive vehicles with Takata airbags until the airbags can be replaced.

30.     Toyota has taken the extreme step of disabling passenger airbags entirely and putting a "Do Not Sit Here" decal in the vehicle until proper repairs can be made.  In the alternative, Toyota is advising customers to not drive their vehicles with Takata airbags until the airbags can be replaced.  Toyota has not explained how drivers who rely on these vehicles for work and school are to cope without means for transportation.

---

[1] Hiroko Tabuchi and Christopher Jensen, *It Looked Like a Stabbing, but Takata Airbag Was the Killer*, N.Y. Times, Oct. 20, 2014.

31.   Plaintiffs and Class Members are either left with unsafe vehicles or no vehicle at all.  At this time, automakers are not offering customers the use of loaner vehicles.

32.   Congress is also concerned with this serious problem and has questioned the legality of Toyota's and other automaker's responses.  U.S. Senators Richard Blumenthal and Edward J. Markey, in a letter to the Department of Transportation (DOT), expressed their alarm "that NHTSA has endorsed a policy recently announced by Toyota and GM that dealers should disable passenger-side airbags and instruct against permitting passengers in the front seat if replacement parts for these airbags are unavailable. **As a matter of policy, this step is extraordinarily troubling and potentially dangerous.**  As a matter of law . . . §30122(b) of the Motor Vehicle Safety Act (40 U.S.C.) prohibits a manufacturer from knowingly making a safety device inoperative unless the [DOT] issues a specific exemption.  We are unaware of an exemption from your office in the case of Takata airbags."[2]

33.   Equally important, the Senators said, is that "all drivers deserve access to loaners or rental cars at no cost to them while they await repairs to their cars that make them safe enough to drive again."[3]  **"[Y]our office should strongly encourage manufacturers to provide rental cars at no cost to consumers if their cars cannot be fixed immediately because of insufficient replacement parts."**[4]

34.   As these Senators have recognized, there is an immediate need to provide safe vehicles for Plaintiffs and Class Members.  Otherwise, many may be left without a vehicle to take them to and from work, to be able to pick up their children from school or childcare, or, in the most urgent situations, a vehicle to transport themselves or someone else to a hospital.

35.   Takata and the Vehicle Manufacturer Defendants knew or should have known that the Takata airbags installed in millions of vehicles were defective.  Both

---

[2] *Id.*
[3] *Id.*
[4] *Id.*(emphasis added).

1 | Takata and the Vehicle Manufacturer Defendants, who concealed their knowledge of the

2 | nature and extent of the defects from the public, have shown a blatant disregard for

3 | public welfare and safety.

4 | <center>**JURISDICTION AND VENUE**</center>

5 | 36.   Jurisdiction is proper in this Court pursuant to the Class Action Fairness

6 | Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff Class are citizens

7 | of states different from Defendants' home states, and the aggregate amount in

8 | controversy exceeds $5,000,000, exclusive of interest and costs.

9 | 37.   This Court has personal jurisdiction over Plaintiffs because Plaintiffs

10 | submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendants

11 | because they conduct substantial business in this District, and some of the actions giving

12 | rise to the Complaint took place in this District.

13 | 38.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a

14 | substantial part of the events or omissions giving rise to these claims occurred in this

15 | District, and the Defendants have caused harm to class members residing in this District

16 | <center>**PARTIES**</center>

17 | <center>**Plaintiffs**</center>

18 | 39.   Plaintiff David Takeda is a citizen of California, and a resident of Encino,

19 | which is in Los Angeles County, CA.  Plaintiff Takeda owns a 2005 Honda Element and

20 | was injured as a result of Defendants' unlawful conduct.

21 | 40.   Plaintiff Teresa Lemke is a citizen of California, and a resident of San

22 | Diego, which is in San Diego County, CA.  Plaintiff Lemke owns a 2003 Honda CRV

23 | and was injured as a result of Defendants' unlawful conduct.

24 | 41.   Plaintiff William Dougherty is a citizen of California, and a resident of

25 | Rancho Sante Fe, which is in San Diego County, CA.  Plaintiff Dougherty owns a 2001

26 | BMW 3-Series Coupe and was injured as a result of Defendants' unlawful conduct.

27 |

28 |

<center>9</center>
<center>COMPLAINT</center>

1    42.    Plaintiff Coleman Haklar is a citizen of California, and a resident of La

2    Canada Flintridge, which is in Los Angeles County, CA.  Plaintiff Haklar owns a 2002

3    Infiniti I35 and was injured as a result of Defendants' unlawful conduct.

4    43.    Plaintiff Susan Nattrass is a citizen of California, and a resident of San

5    Diego, which is in San Diego County, CA.  Plaintiff Nattrass owns a 2004 Toyota

6    Sequoia and was injured as a result of Defendants' unlawful conduct.

7                                            **Defendants**

8    44.    Defendant Takata Corporation ("Takata") is a foreign for-profit corporation

9    with its principal place of business in Tokyo, Japan.  Takata is a specialized supplier of

10   automotive safety systems that designs, manufactures, tests, markets, distributes, and

11   sells airbags.  Takata is a vertically-integrated company and manufactures component

12   parts in its own facilities.

13   45.    Defendant TK Holdings Inc. ("TK Holdings") is a subsidiary of Takata

14   Corporation headquartered in Auburn Hills, Michigan.  TK Holdings sells, designs,

15   manufactures, tests, marks, and distributes airbags in the United States.  TK Holdings

16   both directly and through subsidiaries, owns and operates 56 manufacturing plants in

17   twenty countries.  TK Holdings manufactures airbags in the United States, including

18   airbags at issue in this litigation.

19   46.    Highland Industries, Inc. ("Highland") is a subsidiary of Takata

20   Corporation and is headquartered in Greensboro, North Carolina.  Highland

21   manufactures industrial and automotive textile product solutions including airbag fabrics

22   for the automotive airbag industry.  Highland manufactures airbags in the United States,

23   including airbags at issue in this litigation.

24   47.    Defendants Takata, TK Holdings, and Highland are collectively referred to

25   as "Takata" or "Takata Defendants."  Takata is the manufacturer of all the faulty airbags

26   recalled by the NHTSA that are the subject of this Complaint.

27   48.    Defendant Honda Motor Co., Ltd. ("Honda Motor") is a foreign for-profit

28   corporation with its principal place of business in Tokyo, Japan.  Honda Motor

1   manufactures and sells motorcycles, automobiles, and power products through

2   independent retail dealers, outlets, and authorized dealerships primarily in Japan, North

3   America, Europe, and Asia.

4        49.    Defendant American Honda Motor Co., Inc. ("American Honda") is a

5   subsidiary of Honda Motor headquartered in Torrance, California.  American Honda

6   conducts the sale, marketing, and operational activities for Honda cars, trucks, and sport

7   utility vehicles automobile parts in the United States.  American Honda manufactures

8   and assembles its vehicles for sale in the United States in automobile plants located in

9   Greensburg, Indiana, East Liberty, Ohio, Lincoln, Alabama, and Marysville, Ohio.

10       50.    Defendants Honda Motor and American Honda are collectively referred to

11  as "Honda" or "Honda Defendants."  Honda vehicles sold in the United States contain

12  airbags manufactured by the Takata Defendants.  The NHTSA has recalled to date the

13  following Honda vehicles for having faulty Takata airbags, totaling 5,051,364 vehicles:

14  2001-2007 Honda Accord; 2001-2005 Honda Civic; 2002-2006 Honda CR-V; 2003-

15  2011 Honda Element; 2002-2004 Honda Odyssey; 2003-2007 Honda Pilot; 2006 Honda

16  Ridgeline; 2003-2006 Acura MDX; 2002-2003 Acura TL/CL; and 2005 Acura RL.

17       51.    Defendant Bayerische Motoren Werke AG ("BMW AG") is a German

18  holding company and automobile manufacturer.  BMW AG is headquartered in Munich,

19  Bavaria, Germany.  BMW Group is a subsidiary of BMW AG and is also headquartered

20  in Munich.  BMW AG, together with its subsidiaries, develops, manufactures, and sells

21  cars and motorcycles worldwide.

22       52.    Defendant BMW of North America, LLC ("BMW North America") is a

23  subsidiary of BMW AG and is headquartered in Woodcliff Lake, New Jersey.  BMW of

24  North America is the United States importer of BMW vehicles.

25       53.    Defendant BMW Manufacturing Co., LLC ("BMW Manufacturing") is part

26  of BMW's global manufacturing network and is located in Spartanburg, South Carolina.

27       54.    Defendants BMW AG, BMW North America, and BMW Manufacturing

28  are collectively referred to as "BMW" or "BMW Defendants."  BMW vehicles sold in

the United States contain airbags manufactured by the Takata Defendants. The NHTSA has recalled to date the following BMW vehicles for having faulty Takata airbags, totaling 627,615 vehicles:  2000-2005 3 Series Sedan; 2000-2006 3 Series Coupe; 2000-2005; 3 Series Sports Wagon; 2000-2006 3 Series Convertible; 2001-2006; M3 Coupe; and 2001-2006 M3 Convertible.

55.   Defendant Nissan Motor Co., Ltd. ("Nissan Motor") manufactures and sells automotive products and related parts in Japan and internationally, including in the United States, under the Nissan, Infiniti, and Datsun brand names.  Nissan Motor is headquartered in Yokohama, Japan.

56.   Defendant Nissan North America, Inc. ("Nissan North America") is a subsidiary of Nissan Motor headquartered in Franklin, Tennessee.  Nissan North America designs, develops, manufactures, and markets Nissan vehicles in the United States, Canada, and Mexico.

57.   Defendants Nissan Motor and Nissan North American are collectively referred to as "Nissan" or "Nissan Defendants."  Nissan vehicles sold in the United States contain airbags manufactured by the Takata Defendants. The NHTSA has recalled to date the following Nissan vehicles for having faulty Takata airbags, totaling 694,626 vehicles:  2001-2003 Nissan Maxima; 2001-2004 Nissan Pathfinder; 2002-2004 Nissan Sentra; 2001-2004 Infiniti I30/I35; 2002-2003 Infiniti QX4; and 2003-2005 Infiniti FX35/FX45.

58.   Defendant Toyota Motor Corporation ("Toyota") is the world's largest automaker and the largest seller of automobiles in the United States.  Toyota is a Japanese Corporation headquartered in Toyota City, Aichi Prefecture, Japan.

59.   Defendant Toyota Motor Sales, U.S.A., Inc. ("Toyota U.S.A.") is a wholly-owned subsidiary of Toyota Motor Corporation and is responsible for the marketing, sales, and distribution in the United States of automobiles manufactured by Toyota Motor Corporation.  Toyota U.S.A. is headquartered in Torrance, California and is a subsidiary of Toyota Motor Corporation.

60.     Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") is headquartered in Erlanger, Kentucky with major operations in Arizona, California, and Michigan.  TEMA is responsible for Toyota's engineering design and development, research and development, and manufacturing activities in the U.S., Mexico, and Canada.  TEMA is a subsidiary of Toyota Motor Corporation.

61.     Defendants Toyota, Toyota U.S.A., and TEMA are collectively referred to as "Toyota" or "Toyota Defendants."  Toyota vehicles sold in the United States contain airbags manufactured by the Takata Defendants. The NHTSA has recalled to date the following Toyota vehicles for having faulty Takata airbags, totaling 877,000 vehicles: 2002-2005 Lexus SC; 2002-2005 Toyota Corolla; 2003-2005 Toyota Corolla Matrix; 2002-2005 Toyota Sequoia; and 2003-2005 Toyota Tundra.

## FACTUAL BACKGROUND

### I.  Takata is a Major Manufacturer of Airbags and Inflators

62.     Defendant Takata is the world's second largest manufacturer of automotive safety devices, including airbags.  Takata was a pioneer in developing driver side airbags, being the first to market driver side airbags in the early 1980s.  Takata has supplied airbags to U.S. consumers and to state and local governmental purchasers since at least 1983.

63.     Airbags made up 37.3% of Takata's automotive safety products business in 2007.

64.     Takata also develops other safety technologies, including cushions and inflators, which are components of Takata-manufactured airbags.

65.     The airbags at issue in this case were developed by Takata in the late 1990s in an effort to make airbags more compact and to reduce the toxic fumes that earlier airbag models emitted when deployed.  The redesigned airbags are inflated by means of an explosive based on a common compound used in fertilizer.  That explosive is encased in a metal canister.

66.     The two Takata plants that manufactured the airbags at issue in this Complaint are located in Moses Lake, Washington and Monclova, Mexico.  These plants also manufacture airbag inflators.

67.     Airbags manufactured by Takata, including the airbags at issue in this case, have been installed in vehicles manufactured by at least ten different automakers, including Honda.

68.     Takata Corporation has, since at least 2007, claimed to prioritize driver safety as its "dream."[5]

69.     Based on that "dream," they claimed to be "motivated by the preciousness of life" and pledged to both "communicate openly and effectively."[6]  Takata has failed to live up to its dream by manufacturing, distributing, and selling airbags that can cause serious bodily injury or death.

**II. Honda Field Reports and Takata Internal Testing Reveal a Problem**

70.     Takata has known since at least 2001 that Takata airbags, and particularly the inflator component, were defective, as Isuzu was forced to make a recall that year due to exploding Takata airbags.

71.     In 2004, a Takata airbag violently exploded in a Honda Accord, shooting out metal fragments and injuring the car's driver.  At a loss to explain the incident, Honda and Takata deemed it "an anomaly" and did not issue a recall or seek the involvement of federal safety regulators.[7]

72.     In June and August of 2007, Honda notified Takata of three additional airbag explosion incidents.  All three involved defective airbags driving metal fragments into the faces and limbs of car passengers upon deployment of the airbags.  These incidents triggered an internal investigation by Takata, including a survey of inflators.

73.     Honda settled financial claims with the individuals injured by the airbags.  These settlements were confidential.

---

[5] Takata Company Investor's Meeting Presentation- Investment Highlights, FY2007, at 3.
[6] *Id.*
[7] Hiroko Tabuchi, *Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls*, N.Y. Times (Sept. 11, 2014).

14

COMPLAINT

74.    Honda filed a standard report with U.S. safety regulators on the initial air bag injury in 2004, and followed up with similar filings on the incidents in 2007. Inexplicably, Honda did not issue any recalls and never informed safety regulators of the most critical detail of these incidents: that the airbags posed a substantial risk of serious injury or death when deployed.

### a.  2008 – Recall 08V-593

75.    Takata shared the results of the inflator survey analysis with Honda in November of 2008.  That analysis indicated an airbag inflator issue.  The results triggered a Honda recall, but for only about 4200 of its vehicles.  This recall occurred over four years after the first airbag explosion incident in a Honda car.

76.    The November 2008 recall involved certain 2001 Honda Accord and Civic vehicles to replace airbags that "could produce excessive internal pressure," causing "the inflator to rupture," spraying metal fragments through the airbag cushion ("2008 Recall").[8]  Honda reported that it learned of the problem via a June 2007 claim.

### b.  2009 – Recall 09V-259

77.    In June of 2009, Takata provided a follow up report to Honda on its November 2008 analysis, stating that issues related to propellant production appeared to have caused the improper inflator performance.

78.    Honda subsequently received two more claims of "unusual deployments," Ms. Parham's May 28, 2009 accident and another in June 9, 2009.

79.    As a result of Takata's June 2009 follow up report and the additional claims of "unusual deployments," on June 30, 2009, Honda expanded the recall to 440,000 vehicles, which included 2001 and 2002 Civic, Accord, and Acura vehicles ("2009 Recall").

---

[8] Nov. 11, 2008 Honda Recall Letter to NHTSA, at 2.

1      80.    In August 2009, the NHTSA Recall Management Division sent Honda an

2 information request to explain why it did not include 2009 Recall vehicles in the 2008

3 Recall, and "to evaluate the timeliness of [Honda's] recent defect decision."[9]

4      81.    NHTSA also wanted to know "the difference between the driver's airbag

5 inflators in those vehicles from the inflators in the 09V-259 vehicles and explain how

6 this distinction, or any other between the two sets of vehicles, convinced HMC at the

7 time that it did not need to include the latter set in the 08V-593 recall population."[10]

8      82.    The NHTSA Recall Management Division further requested that Honda

9 provide complaints, lawsuits, warranty claims, and field reports, along with an

10 explanation of the "unusual deployments" and Honda's investigative efforts.[11]

11      83.    In Honda's September 2009 reply to the NHTSA, the automaker said that

12 its information about the "unusual deployments" came from Takata:  "We understood

13 the causal factors to be related to airbag propellant due to handling of the propellant

14 during airbag inflator module assembly."[12]

15      84.    Honda also reported, based on information from Takata, the problem with

16 the airbags was isolated to the "production of the airbag propellant prior to assembly of

17 the inflators."  Specifically, the cause was "related to the process of pressing the

18 propellant into wafers that were later installed into the inflator modules," and limited to

19 "one production process" involving one high-precision compression press that was used

20 to form the propellant into wafers, the automaker told NHTSA.[13]

21      85.    Honda also disclosed to the NHTSA that it had fielded nine complaints and

22 one lawsuit related to the 2008 and 2009 Recalls.  Honda also, for the first time, told

23 NHTSA about the 2004 incident involving an "unusual deployment" of the vehicles

24

25

26

27 [9] Aug. 19, 2009 Letter from NHTSA to American Honda Motor Co.
[10] *Id.*

28 [11] *Id.*
[12] Sept. 16, 2009 Letter from Honda American Motor Co. to NHTSA, at 1.
[13] *Id.* at 1.

airbag.  Honda claimed that it "only recently were reminded of this incident," and that, until recently, Honda "had not associated it with the [2008 Recall] campaign."[14]

86.     At least four complaints have been submitted to the NHTSA by Honda vehicle operators reporting defective airbag deployments that have released metal shards into the cabin of the Honda vehicle.

### c.  Takata's Contact with NHTSA

87.     In both responses, Takata asserted that the defects only existed in specific lots manufactured between certain dates.  They claimed that the inflators involved in the 2008 Recall were manufactured between October 29, 2000 and December 1, 2000.  They also claimed that inflators involved in the 2009 Recall were manufactured between August 23, 2000 and February 25, 2001.

88.     Takata did not provide the dates the inflators were shipped, as the NHTSA requested, because, as Takata admitted, its records did not have that information.  Instead, they gave just the manufacturing dates.

89.     In both the Partial Response to NHTSA on December 23, 2009, and the Full Response on February 19, 2010, Takata stated that: "Takata has not provided any airbag inflators that are the same or substantially similar to the inflators in vehicles covered by the recalls in 2008 and 2009 **to any customers other than Honda.  The physical characteristics of the inflator housing used in the Honda vehicles subject to these recalls are unique to Honda**."[15]  This statement would prove to be untrue.

90.     In its Full Response, Takata asserted that the defect identified in the 2009 Recall was the result of a single compression press, although Takata recommended to Honda that a small number of other vehicles with propellant processed on a different press be recalled as well.

91.     In the Full Response, Takata asserted that the defective parts were all manufactured on a particular press (the "Stokes press") in a single manufacturing plant.

---

[14] *Id.* at 4.
[15] Dec. 23, 2009 Letter from Takata to NHTSA, at 2; Feb. 19, 2010 Letter from Takata to NHTSA, at 2.

1   Takata further asserted that while they did manufacture 2,400 inflators using the same

2   process as the defective inflators, the design was different and "[t]herefore Takata is

3   convinced that the inflators sold [redacted] contain no safety-related defect."[16]

4       92.    Takata wrote in its Full Response that it "believed – [redacted] – that

5   expanding the recall to include all vehicles equipped with inflators manufactured with

6   Stokes propellant produced through and including February 28, 2001 would capture all

7   inflators with tablets that had a risk of producing overly energetic combustion.  This

8   recommendation, as well as the analysis that supported it, was presented to Honda on

9   June 12 2009."[17]

10       93.    Both Honda and Takata represented to the public and the NHTSA that the

11   total number of affected vehicles was quite small.

12       **d.  2010 – Recall 10V-041**

13       94.    In 2010, merely months after its previous recall, Honda announced a third

14   recall for an additional 379,000 vehicles, including 2002 Honda CR-V, 2002 Honda

15   Odyssey, 2003 Honda Pilot, 2002-2003 Acura 3.2TL, and 2003 Acura 3.2CL vehicles,

16   while adding more 2001 and 2002 Accords and Civics to its 2009 recall list ("2010

17   Recall").

18       95.    Honda's explanation for the airbag defects changed yet again.  Honda

19   explained that there are two different manufacturing processes utilized in the preparation

20   of an airbag propellant.  While one process is within specification, the other is not.

21   Honda's expanded recall reached those vehicles employing airbags that had utilized

22   manufacturing processes not within specification.

23       **e.  2011 – Recall 11V-260**

24       96.    In April 2011, Honda filed a Part 573 Defect and Noncompliance report for

25   2,430 replacement service part airbag modules that might have been installed in vehicles

26   covered by previous recall expansions ("2011 Recall").

27

28

---

[16] Feb. 19, 2010 Letter from Takata to NHTSA, at 5.
[17] *Id.* at 11-12.

### f.  2013 – Recall 13V-132

97.     By 2013, it became clear that the defective airbag issue was far more widespread than Takata or Honda initially reported to the NHTSA.

98.     According to Honda's 2013 Defect and Noncompliance report, an exploding airbag in Puerto Rico in October 2011 prompted Honda to ask permission from the NHTSA to collect "healthy" airbag modules to see if "abnormal combustion was possible."  Honda found that even its so-called "healthy" airbags could abnormally combust in certain conditions.

99.     On February 8, 2013, NHTSA and Honda met to discuss the "ongoing investigation" into Honda's defective Takata airbags.  Honda stated:

> A recreation of propellant production using the same methods as were used during 2001-2002 production periods indicated that it was possible for propellant produced during 2001-2002 to be manufactured out of specification without the manufacturing processes correctly identifying and removing the out of specification propellant. Separately, Honda was informed by the supplier of another potential concern related to airbag inflator production that could affect the performance of these airbag modules.[18]

100.    On April 10, 2013, Honda filed a Recall Notification ("2013 Recall") for their 2001-2003 Civic, 2002-2003 CR-V, and their 2002 Odyssey vehicles with the NHTSA.  In that notification, Honda asserted that 561,422 vehicles could be affected by the following part defect:

> **Defect description:**
>
> In certain vehicles, the passenger's (frontal) airbag inflator could produce excessive internal pressure.  If an affected airbag deploys, the increased internal pressure may cause the inflator to rupture.  In the event of an inflator rupture, metal fragments could be propelled upward toward the

[18] April 10, 2013 Letter to NHTSA, at 2-3.

1    windshield, or downward toward the front passenger's foot well, potentially

2    causing injury to a vehicle occupant.[19]

3        101.   On April 11, 2013, Takata filed a Defect Information Report titled "Certain

4    Airbag Inflators Used as Original Equipment" ("Takata DIR").  In that report, Takata

5    identified the defective airbags as follows:

6            Certain airbag inflators installed in frontal passenger-side airbag modules

7            equipped with propellant wafers manufactured at Takata's Moses Lake,

8            Washington plant during the period from April 13 2000 (start of

9            production) through September 11, 2002…and certain airbag inflators

10           manufactured at Takata's Monclova, Mexico plant during the period from

11           October 4, 2001 (start of production) through October 31, 2002….[20]

12       102.   It wasn't until its April 2013 Report that Takata finally admitted that its

13   affected inflators were installed as original equipment in vehicles manufactured by car

14   manufacturers other than Honda, including Toyota, Nissan, Mazda, and BMW.[21]

15       103.   Takata asserted that it did not know how many inflators were installed in

16   vehicles, as it did not have those records.[22]  While it did not have the information to

17   estimate the number of vehicles affected, Takata still insisted that the total number of

18   installed inflators would be extremely low.

19       104.   Takata described the defect as follows:

20           Some propellant wafers produced at Takata's plant in Moses Lake,

21           Washington, between April 13, 2000 and September 11, 2002 may have

22           been produced with an inadequate compaction force. . . . In addition some

23           propellant wafers used in inflators produced at Takata's plant in Monclova,

24           Mexico between October 4, 2001 and October 31, 2002, may have been

25           exposed to uncontrolled moisture conditions.  These wafers could have

26

27   _____

[19] *Id.* at 2.

28   [20] Takata April 11, 2013 DIR at 3.

[21] *Id.* at 2-3

[22] *Id.* at 3.

absorbed moisture beyond the allowable limits . . . . In both cases propellant could potentially deteriorate over time due to environmental factors, which could lead to over-aggressive combustion in the event of an airbag deployment.  This could create excessive internal pressure within the inflator and the body of the inflator could rupture.[23]

### III.   Recalls and Notices Relating to Defective Airbag Inflators in Non-Honda Vehicles

105.   In April of 2013, based on Takata's new admissions, six major automakers, including Nissan, Mazda, BMW, Pontiac, and Honda, issued recalls of **3.6 million** vehicles containing Takata airbags.

106.   Chrysler and Ford similarly announced limited regional NHTSA recalls for vehicles originally sold or currently registered in Florida, Puerto Rico, Hawaii, or the U.S. Virgin Islands, and equipped with Takata airbag inflators.

107.   On October 22, 2014, the NHTSA expanded the list of vehicles affected by the recall of defective Takata components to cover ten automakers and numerous car models, totaling nearly 8 million vehicles.  Those automakers are BMW (627,615 potentially affected vehicles), Chrysler (371,309 potentially affected vehicles), Ford (58,669 potentially affected vehicles), General Motors (undetermined number of potentially affected vehicles), Honda (5,051,364 potentially affected vehicles), Mazda (64,872 potentially affected vehicles), Mitsubishi (11,985 potentially affected vehicles), Nissan (694,626 potentially affected vehicles), Subaru (17,516 potentially affected vehicles) and Toyota (877,000 potentially affected vehicles).[24]

108.   Over the past 13 years that Takata has known there was a problem with the safety of their airbags, there have been at least four deaths and 139 injuries linked to defective Takata airbags.

---

[23] *Id.* at 3-4.
[24] Ben Klayman, *U.S. regulators expand number of vehicles affected by Takata recalls*, Oct. 22, 2104, Reuters, *available at* http://www.reuters.com/article/2014/10/22/us-autos-takata-warning-idUSKCN0IB03B20141022.

IV.    **Takata Fails to Meet Safety Standards and Maintain Airbag Quality**

109.    As recently as 2011, supervisors at Takata's Monclova plant were reporting potentially lethal defects in the manufacturing process.  Based on internal Takata documents, Takata was unable to meet its own standards for safety up until at least 2011.[25]

110.    Despite all the theories proposed by Takata to federal regulators as to the sources of the defects, according to documents reviewed by *Reuters*, Takata also cited rust, bad welds, and even chewing gum dropped into at least one inflator as reasons for the defects. The same documents show that in 2002, Takata's plant in Mexico allowed a defect rate that was "six to eight times above" acceptable limits, or roughly 60 to 80 defective parts for every 1 million airbag inflators shipped.

V. **Federal Investigations**

111.    The NHTSA is now investigating Takata airbags manufactured between 2000 and 2007 to determine whether Takata airbag inflators made during that time were improperly sealed.[26]

112.    In a Consumer Advisory dated October 22, 2014, the NHTSA said:

The National Highway Traffic Safety Administration urges owners of certain Toyota, Honda, Mazda, BMW, Nissan, Mitsubishi, Subaru, Chrysler, Ford and General Motors vehicles to act immediately on recall notices to replace defective Takata airbags. Over seven million vehicles are involved in these recalls, which have occurred as far back as 18 months ago and as recently as Monday. The message comes with urgency, especially for owners of vehicles affected by regional recalls in the following areas: Florida, Puerto Rico, limited areas near the Gulf of Mexico in Texas,

[25] Joanna Zuckerman Bernstein, Ben Klayman, and Yuko Kubota, *Exclusive: Takata engineers struggled to maintain airbag quality, documents reveal*, Reuters, Oct. 17, 2014, *available at* http://www.reuters.com/article/2014/10/18/us-takata-airbags-idUSKCN0I701B20141018.
[26] Klayman, *supra* n.20.

1    Alabama, Mississippi, Georgia, and Louisiana, as well as Guam, Saipan,

2    American Samoa, Virgin Islands and Hawaii.

3    113.   The U.S. Department of Justice has reported that it is investigating whether

4    Takata misled U.S. regulators about the number of defective airbags it sold to

5    automakers, including Toyota and Honda.

6    **VI.   Automakers Have Failed to Provide Vehicle Owners with Takata Airbags**

7    **with Replacement Parts or Vehicles**

8    114.   In a statement from Honda regarding Airbag Inflator Regional Safety

9    Improvement Campaigns, dated October 22, 2014, Honda announced:

10                If a customer has received notification from Honda about this special

11               campaign, Honda requests that the customer promptly contact his/her local

12               authorized dealer and make an appointment for replacement of the covered

13               airbag components.

14    115.   However, Honda has acknowledged that it would not send out recall letters

15    to car owners or lessees until there are parts available, meaning that many drivers would

16    not receive notices for weeks or longer as they continue to drive vehicles with

17    potentially deadly airbags.

18    116.   Like Honda, other automakers have also instructed customers to make an

19    appointment to replace their Takata airbags at an authorized dealer.

20    117.   But, authorized dealers are experiencing a severe shortage of parts to

21    replace the faulty airbags.  Dealers have been telling frustrated car owners to expect to

22    wait many months before their airbags can be replaced.  Honda owners who have

23    received recall notices have been told to wait at least a month before their authorized

24    dealer has availability to assess their vehicle.  Toyota dealers are reporting that wait

25    times for customers who own affected vehicles to get their Takata airbags replaced could

26    be as long as one to three months.[27]

27    _____

28    [27] Jeff Harrington, *Tampa Bay auto dealers warn of delays to replace defective airbags*, Tampa Bay Times, October 21, 2014, *available at* http://www.tampabay.com/news/business/autos/tampa-bay-auto-dealers-warn-of-delays-to-replace-defective-airbags/2203132.

COMPLAINT

118.   In response to the airbag replacement shortage, Toyota has taken the extreme step of disabling passenger airbags entirely and putting a "Do Not Sit Here" decal in the vehicle until a proper repair can be made.  In the alternative, Toyota is advising customers to not drive their vehicles with Takata airbags until the airbags can be replaced.

119.   Like Toyota, other automakers have also resolved to remedy their customers' vehicles containing Takata airbags not by providing temporary replacement vehicles or replacement parts, but by disengaging the airbags entirely.

120.   In fact, customers are put in potentially dire situations because replacement airbag parts are not available in the quantities demanded by those affected by the millions of recalls.  At this time, automakers are not offering customers loaner cars to use until their airbags can be replaced.

121.   Congress is also concerned with this serious problem.  U.S. Senators Richard Blumenthal and Edward J. Markey, in a letter to the Department of Transportation (DOT), "urge[d] [the DOT] to provide clear guidance regarding [NHTSA's] October 21st Consumer Advisory about potentially defective Takata airbags."[28]

122.   The Senators expressed their belief "that NHTSA should immediately issue a nation-wide safety recall on all the affected cars, regardless of where the car is registered.  NHTSA's October 21, 2014 Consumer Advisory provided "no factual basis for distinguishing between states or regions of the country regarding the potential severe danger of this defect to motorists.  All state experience seasons of heat and humidity . . . Replacement parts are, 'essential to personal safety,' **for all drivers** whether they live in New England or Florida, and the NHTSA should immediately issue a nation-wide recall that protects all drivers."[29]

---

[28] Oct. 23, 2014  Letter from U.S. Senators Richard Blumenthal and Edward J. Markey to the U.S. Dept. of Transportation, at 1.
[29] *Id.* at 2.

123.   The Senators were also "alarmed and astonished that NHTSA has endorsed a policy recently announced by Toyota and GM that dealers should disable passenger-side airbags and instruct against permitting passengers in the fronts seat if replacement parts for these airbags are unavailable.  As a matter of policy, this step is extraordinarily troubling and potentially dangerous.  As a matter of law . . . §30122(b) of the Motor Vehicle Safety Act (40 U.S.C.) prohibits a manufacturer from knowingly making a safety device inoperative unless the [DOT] issues a specific exemption.  We are unaware of an exemption from your office in the case of Takata airbags."[30]

124.   Equally important, the Senators said, is that "all drivers deserve access to loaners or rental cars at no cost to them while they await repairs to their cars that make them safe enough to drive again."[31]  **"[Y]our office should strongly encourage manufacturers to provide rental cars at no cost to consumers if their cars cannot be fixed immediately because of insufficient replacement parts."**[32]

125.   Plaintiffs and Class Members are now left in the position of either being without a vehicle or driving a vehicle that does not have an operable airbag for months at a time.  They are left without a vehicle to take them to work, to pick up their children at school or childcare, or, more urgently, a vehicle for emergency situations.  Plaintiffs and Class Members must also take time away from work and other important obligations to take their vehicles to the repair shop when replacement parts do become available.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment

126.   Upon information and belief, Defendant Takata has known of the defects in its airbags since at least 2001.  Defendant Honda has known of the defects in the Takata airbags in Honda's vehicles since 2004.  The Vehicle Manufacturer Defendants have known or should have known of the defects in Takata's airbags since 2008.  Defendants knew well before Plaintiffs and Class Members purchased the Defective Vehicles, and

---

[30] *Id.*
[31] *Id.*
[32] *Id.* (emphasis added).

1  have concealed from or failed to notify Plaintiffs, Class Members, and the public of the
2  full and complete nature of the defects.

3      127.   Although Defendants have now acknowledged to safety regulators that
4  Takata's airbags are defective, for years, Defendants did not fully investigate or disclose
5  the seriousness of the issue and in fact downplayed the widespread prevalence of the
6  problem.

7      128.   Any applicable statute of limitation has therefore been tolled by
8  Defendants' knowledge, active concealment, and denial of the facts alleged herein,
9  which behavior is ongoing.

10                          **CLASS ACTION ALLEGATIONS**

11      129.   Plaintiffs bring this action as a class action under Federal Rule of Civil
12  Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of themselves and all others similarly
13  situated.  Plaintiffs seek to represent a class (the "Nationwide Class") initially defined
14  as:

15              All current and former owners and lessees of a Defective
               Vehicle (as defined herein) in the United States.
16
       130.   Additionally, Plaintiffs seek to represent the following statewide class (the
17
   "Statewide Class") defined as follows:
18
19      a.      All current and former owners and lessees of a Defective
20              Vehicle (as defined herein) in California (the "California State
21              Class")

22      131.   Excluded from the Nationwide and Statewide Class are Defendants, as well
23  as Defendants' employees, affiliates, officers, and directors, including franchised
24  dealers, any individuals who experienced physical injuries as a result of the defects at
25  issue in this litigation, and the judge and court staff to whom this case is assigned.
26  Plaintiff reserves the right to amend the definition of the class if discovery or further
27  investigation reveals that the class should be expanded or otherwise modified.

28      132.   **Numerosity and impracticality of joinder.**  The members of the
Nationwide and Statewide Class are so numerous that joinder of all members is

impractical.  Millions of Nationwide and Statewide Class members purchased or leased class vehicles.  The members of the Nationwide and Statewide Class are easily and readily identifiable from information and records in Defendants possession, custody, or control.

133.  **Commonality and predominance.**  There are common questions of law and fact that predominate over any questions affecting the individual members of the Nationwide and Statewide Class.  Common legal and factual questions include, but are not limited to:

    a.    whether Defendants breached the duty of reasonable care it owed to the Nationwide and Statewide Class;

    b.    whether Defendants breach of its duties directly and proximately caused the Nationwide and Statewide Class damages;

    c.    whether Defendants omitted, misrepresented, concealed, or manipulated material facts from Plaintiffs and the Nationwide and Statewide Class regarding the defects, the actions taken to address the defects, and the result of those actions;

    d.    whether Defendants had a duty to disclose the defects to Plaintiffs and the other Nationwide and Statewide Class members;

    e.    whether Defendants engaged in fraud, fraudulent concealment, and made fraudulent representations to the public;

    f.    whether Plaintiffs and the other Nationwide and Statewide Class members are entitled to damages; and

    g.    whether Plaintiffs and the other Nationwide and Statewide Class members are entitled to equitable relief or other relief, and the nature of such relief.

134. **Typicality.** Plaintiffs' claims are typical of the claims of the other Nationwide and Statewide Class members because Plaintiffs and the other Nationwide and Statewide Class members purchased vehicles that contain defective parts. Neither Plaintiffs nor the other Nationwide and Statewide Class members would have purchased the Defective Vehicles had they known of the defects in the vehicles. Those defects also pose an unreasonable risk of harm to Plaintiffs and the other Nationwide and Statewide Class members. Plaintiffs and the other Nationwide and Statewide Class members suffered damages as a direct proximate result of the same wrongful practices that Defendants engaged in. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Nationwide and Statewide Class members. Plaintiffs' claims are based upon the same legal theories as the claims of the other Nationwide and Statewide Class members.

135. **Adequacy.** Plaintiffs will fully and adequately protect the interests of the other members of the Nationwide and Statewide Class and have retained class counsel who are experienced and qualified in prosecuting class actions, including consumer class actions and other forms of complex litigation. Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other Nationwide and Statewide Class members.

136. **Declaratory and Injunctive Relief.** Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Nationwide and Statewide Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Nationwide and Statewide Class members as a whole.

137. **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, among other things: it is economically impracticable for members of the Nationwide and Statewide Class to prosecute individual actions; prosecution as a class action will eliminate the possibility

of repetitious and redundant litigation; and, a class action will enable claims to be handled in an orderly, and expeditious manner.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of the Magnuson-Moss Warranty Act**
**15 U.S.C. §§ 2301 *et seq.***
**(Brought on behalf of the Nationwide Class)**

138.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

139.   Plaintiffs bring this Count on behalf of the Nationwide Class ("Class," for the purposes of this Count).

140.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

141.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

142.   Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

143.   The Defective Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

144.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

145.   Defendants express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Defective Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

146.   Defendants breached these warranties as described in more detail above. Without limitation, the Defective Vehicles share a common design defect in that they are equipped with defective airbags that can suddenly fail during normal operation, leaving occupants of the Defective Vehicles vulnerable to crashes, serious injury, and death. Defendants have admitted that the Defective Vehicles are defective in issuing its recall.

147.    Plaintiffs and each of the other Class members have had sufficient direct dealings with either Defendants or its agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiffs and each of the other Class members, on the other hand.  Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and its dealers, and specifically, of Defendants implied warranties.  The dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.  Finally, privity is also not required because the Defective Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

148.    Affording Defendants a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.  At the time of sale or lease of each Defective Vehicle, Defendants knew, should have known, or was reckless in not knowing of its misrepresentations concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

149.    Plaintiffs and the other Class members would suffer economic hardship if they returned their Defective Vehicles but did not receive the return of all payments made by them.  Because GM is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class members have not re-accepted their Defective Vehicles by retaining them.

150.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in

this lawsuit. Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### Fraudulent Concealment
### (Brought on behalf of the Nationwide Class)

151.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein

152.   Plaintiffs bring this Count on behalf of the Nationwide Class ("Class," for purposes of this Count).

153.   Defendants intentionally concealed material facts from Plaintiffs, the other Class members, the public, and NHTSA.  Defendants knew that the Defective vehicles were designed and manufactured with airbag defects, but Defendants concealed those material facts.  Although the Defective vehicles contain material airbag defects that Defendants knew of, or should have known of, at the time of distribution, Defendants recklessly manufactured and distributed those vehicles to consumers in the United States.  Those consumers had no knowledge of the defects.

154.   Defendants had a duty to disclose the facts to Plaintiffs, the other Class members, the public, and NHTSA, but failed to do so.

155.   Defendants knew that Plaintiffs and the other Class members had no knowledge of those facts and that neither Plaintiffs nor the other Class members had an equal opportunity to discover the facts.  Defendants was in a position of superiority over Plaintiffs and the other Class members.  Indeed, Plaintiffs and the other Class members trusted Defendants not to sell or lease them vehicles that were defective or that violated federal law governing motor vehicle safety.

156.   By failing to disclose these material facts, Defendants intended to induce Plaintiffs and the other Class members to purchase or lease the Defective Vehicles.

**THIRD CLAIM FOR RELIEF**
**Violation of the California False Advertising Law**
**Cal. Civil Code §§ 17500 *et seq.***
**(Brought on behalf of the California State Class)**

157.   This claim is brought on behalf of Plaintiffs and the California Statewide Consumer Class against Defendants.

158.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

159.   Defendants are "persons" under California Civil Code § 1761(c).

160.   California Statewide Class Members are "consumers," as defined by California Civil Code § 1761(d), who purchased or leased one or more Defective Vehicles containing Takata airbags.

161.   Defendants participated in unfair or deceptive acts or practices that violated the Consumer Legal Remedies Act ("CLRA"),Cal. Civ. Code § 1750, *et seq.*, as described above and below, by among other things, representing that the Defective Vehicles and/or Takata airbags have characteristics, uses, benefits, and qualities which they do not have; representing that Defective Vehicles and/or Takata airbags are of a particular standard, quality, and grade when they are not; advertising Defective Vehicles and/or Takata airbags  with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Defective Vehicles and/or Takata airbags has been supplied in accordance with a previous representation when it has not.

162.   In the course of their business, Defendants willfully failed to disclose and actively concealed the dangers and risks posed by the Takata airbags in the Defective Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Defective Vehicles containing Takata airbags. Defendants are directly liable for engaging in unfair and

1   deceptive acts or practices in the conduct of trade or commerce in violation of the

2   CLRA. Defendant parent companies are also liable for their subsidiaries' violations of

3   the CLRA because the subsidiaries act and acted as the parents companies' general

4   agents in the United States for purposes of sales and marketing.

5        163.  As alleged above, Defendants knew of the dangers and risks posed by the

6   Takata airbags, while the California State Class was deceived by the Defendants'

7   omissions into believing the Defective Vehicles were safe, and the information could not

8   have reasonably been known by the consumer.

9        164.  Defendants knew or should have known that their conduct violated the

10   CLRA.

11        165.  As alleged above, the Defendants made material statements about the safety

12   and reliability of Defective Vehicles that were either false or misleading.

13        166.  Defendants engaged in a deceptive trade practice when they failed to

14   disclose material information concerning the Defective Vehicles and/or Takata airbags

15   which they knew at the time of the sale/lease. Defendants knew of and deliberately

16   withheld the information about the Takata airbags' propensity to release shrapnel upon

17   deployment or otherwise malfunction in order to ensure that consumers would purchase

18   their vehicles and to induce the consumer to enter into a transaction. To protect their

19   profits and to avoid remediation costs and a public relations nightmare, Defendants

20   concealed the dangers and risks posed by the Takata airbags and their tragic

21   consequences and allowed unsuspecting new and used car purchasers to continue to

22   buy/lease the Defective Vehicles and allowed all Defective Vehicle owners/lessors to

23   continue driving highly dangerous vehicles.

24        167.  Defendants each owed the California State Class a duty to disclose the

25   defective nature of Defective Vehicles and/or dangers and risks posed by the Takata

26   airbags, including the dangerous risk that the Takata airbags will release shrapnel upon

27   deployment, because they:

28

    a. Possessed exclusive knowledge of the defects rendering Defective Vehicles and/or Takata airbags inherently more dangerous and unreliable than similar vehicles;

    b. Intentionally concealed the hazardous situation with Defective Vehicles and/or Takata airbags through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from the California State Class; and/or

    c. Made incomplete representations about the safety and reliability of Defective Vehicles and/or Takata airbags while purposefully withholding material facts from the California State Class that contradicted these representations.

168.   The Defective Vehicles and/or Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the California State Class, passengers, other motorists, pedestrians, and the public at large, because the Takata airbags are susceptible to releasing shrapnel upon deployment or other malfunctions.

169.   Defendants' unfair or deceptive acts or practices were likely to deceive reasonable consumers, including the California State Class, about the true safety and reliability of Defective Vehicles and/or Takata airbags. Defendants intentionally and knowingly misrepresented material facts regarding the Defective Vehicles and/or Takata airbags with an intent to mislead the California State Class.

170.   The Defendants have also violated the CLRA by violating the TREAD Act, 49 U.S.C. §§ 30101, *et. seq.*, and its accompanying regulations by failing to promptly notify vehicle owners, purchasers and dealers of the defective Takata airbags and remedy the defects. 49 U.S.C. § 30118(b)(2)(A) & (B).

171.   Defective Vehicles equipped with the Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the California State Class, passengers, other motorists, and pedestrians, because the Takata airbags are susceptible to releasing shrapnel upon deployment or other malfunctions.

172.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the California State Class, about the true safety and reliability of the Defective Vehicles and/or Takata airbags.

173.   The propensity of the Defective Vehicles' Takata airbags to emit shrapnel upon deployment or otherwise malfunction was material to the California State Class. Had the California State Class known that their vehicles had these serious safety dangers, risks and/or defects, they would either not have purchased their Defective Vehicles containing Takata airbags, or would have paid less for them than they did.

174.   All members of the California State Class suffered ascertainable loss caused by the Defendants' failure to disclose material information. The California State Class overpaid for their vehicles and did not receive the benefit of their bargain—vehicles containing airbags that did not pose safety risks.  As the result of the existence of, the concealment of and the failure to remedy the dangers and risks posed by the Takata airbags and Defective Vehicles, and the piecemeal and serial nature of the recalls, the value of their Defective Vehicles has diminished. This is particularly true now that the safety issues with the Takata airbags in the Defective Vehicles have come to light, and the California State Class own and lease unsafe vehicles.

175.   Members of the California State Class have been proximately and directly damaged by Defendants' misrepresentations, concealment, and non-disclosure of the dangers and risks posed by the Takata airbags in the Defective Vehicles.  They own and lease vehicles whose value has greatly diminished.  The diminishment of the Defective Vehicles' value was only exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags.  Defendants' egregious and widely-publicized conduct and the never-ending and piecemeal nature of Defendants' recalls have so tarnished the Defective Vehicles that no reasonable consumer would purchase them—let alone pay what would otherwise be fair market value for the vehicles.

176.   The California State Class Members risk irreparable injury as a result of the Defendants' acts and omissions in violation of the CLRA, and these violations present a continuing risk to the California State Class as well as to the general public. The Companies' unlawful acts and practices complained of herein affect the public interest.

177.   The recalls and repairs instituted by Defendants have not been adequate. The recall is not an effective remedy and is not offered for all Defective Vehicles and other vehicles with Takata airbags susceptible to the malfunctions described herein. Moreover, Defendants' failure to comply with TREAD Act disclosure obligations continues to pose a grave risk to the California State Class.

178.   As a direct and proximate result of the Companies' violations of the CLRA, the California State Class have suffered injury-in-fact and/or actual damage and, if not stopped, will continue to harm Class Members.  Plaintiffs and Class Members currently own or lease, or within the class period have owned or leased, Class Vehicles that are defective and inherently unsafe. Plaintiffs and Class Members risk irreparable injury as a result of Defendants' acts and omissions in violation of the CLRA, and these violations present a continuing risk to Plaintiffs and Class Members as well as to the general public.

179.   Thus Plaintiffs, on behalf of themselves and for all those similarly situated, demands judgment against Defendants under the CLRA for injunctive relief in the form of restitution and/or proportional disgorgement of funds paid to Defendants to purchase and/or lease their vehicles, an injunction requiring Defendants to adequately and permanently repair the vehicles, or provide a suitable alternative, free of charge, and an award of attorneys' fees pursuant to Civil Code § 1780(d).   Plaintiffs seeks this injunctive relief for Defendants' violations of CLRA §§ 1770(a)(5), (7), and (9).

180.   In accordance with section 1782(a) of the CLRA, Plaintiffs' counsel, on behalf of Plaintiffs, will serve Defendants with notice of their alleged violations of California Civil Code § 1770(a) relating to the Defective Vehicles purchased by the Plaintiffs, and demanding that Defendants correct or agree to correct the actions

described therein. If Defendants fail to do so, Plaintiffs will amend this Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to which Plaintiffs and the Class are entitled.

### FOURTH CLAIM FOR RELIEF
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(Brought on behalf of the California State Class)**

181.   This claim is brought on behalf of Plaintiffs and the California State Class against Defendants.

182.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

183.   California Business and Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising. . . .".

184.   The Defendants committed an unlawful business act or practice in violation of § 17200 by their violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et. seq.*, as set forth above, by the acts and practices set forth in this Complaint.

185.   Defendants also violated the unlawful prong because they have engaged in violations of National Traffic and Motor Vehicle Safety Act of 1996, codified at 49 U.S.C. § 30101, *et. seq.*, and its regulations.

186.   Federal Motor Vehicle Safety Standard ("FMVSS") 573 governs a motor vehicle manufacturer's responsibility to notify the NHTSA of a motor vehicle defect within five days of determining that a defect in a vehicle has been determined to be safety-related. See 49 C.F.R. § 573.6.

187.   Defendants violated the reporting requirements of FMVSS 573 requirement by failing to report the airbag defect or any of the other dangers or risks posed by the Takata airbags within five days of determining the defect existed, and failing to recall all affected vehicles.

188.   The Defendants also violated the common-law claim of negligent failure to recall, in that they knew or should have known that the Defective Vehicles and/or Takata

37

1  airbags were dangerous and/or were likely to be dangerous when used in a reasonably
2  foreseeable manner; Defendants became aware of the attendant risks after the Defective
3  Vehicles and/or Takata airbags were sold; they continued to gain information further
4  corroborating the airbags' defects and dangers posed by the Takata airbag; and
5  Defendants failed to adequately recall the Defective Vehicles and/or Takata airbags in a
6  timely manner, which failure was a substantial factor in causing the California State
7  Class harm, including diminished value and out-of-pocket costs.

8       189.   Defendants committed unfair business acts and practices in violation of §
9  17200 when they concealed the existence and nature of the airbag defects and dangers
10  and risks posed by the Takata airbags, and they represented that vehicles containing
11  Takata airbags were reliable and safe when, in fact, they are not. The Takata airbags
12  present safety hazards for occupants of vehicles in which they are installed.

13       190.   Defendants also violated the unfairness prong of § 17200 by failing to
14  properly administer the numerous recalls of their vehicles with the Takata airbags. As
15  alleged above, the recalls have proceeded unreasonably slowly in light of the safety-
16  related nature of the defects, and have been plagued with shortages of replacement parts
17  as well as a paucity of loaner vehicles available for Class Members whose Vehicles are
18  in the process of being repaired.

19       191.   Defendants violated the fraudulent prong of § 17200 because the
20  misrepresentations and omissions regarding the safety and reliability of their vehicles
21  and/or airbags as set forth in this Complaint were likely to deceive a reasonable
22  consumer, and the information would be material to a reasonable consumer.

23       192.   Defendant committed fraudulent business acts and practices in violation of
24  § 17200 when they concealed the existence of dangers and risks and nature of the
25  dangers and risks posed by the Takata airbags, while representing in their marketing,
26  advertising, and other broadly disseminated representations that the vehicles containing
27  Takata airbags were reliable and safe when, in fact, they are not. Defendants'
28  representations and active concealment of the dangers and risks posed by the Takata

1   airbags are likely to mislead the public with regard to the true defective nature of the

2   Defective Vehicles and other vehicles with Takata airbags.

3       193.   Defendants have violated the unfair prong of § 17200 because of the acts

4   and practices set forth in the Complaint, including the manufacture and sale of vehicles

5   with the Takata airbags, and Defendants' failure to adequately investigate, disclose and

6   remedy, offend established public policy, and because of the harm they cause to

7   consumers greatly outweighs any benefits associated with those practices. Defendants'

8   conduct has also impaired competition within the automotive vehicles market and has

9   prevented the California State Class from making fully informed decisions about

10  whether to purchase or lease Class Vehicles and/or the price to be paid to purchase or

11  lease Class Vehicles.

12      194.   The California State Class has suffered injuries in fact, including the loss of

13  money or property, as a result of Defendants' unfair, unlawful, and/or deceptive

14  practices. As set forth in the allegations concerning each California State Class member,

15  in purchasing or leasing their vehicles, the California Class relied on the

16  misrepresentations and/or omissions of Defendant with respect of the safety and

17  reliability of the vehicles and/or Takata airbags. Defendants' representations turned out

18  not to be true. Had the California State Class known this they would not have purchased

19  or leased their Class Vehicles and/or paid as much for them.

20      195.   All of the wrongful conduct alleged herein occurred, and continues to

21  occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of

22  a pattern or generalized course of conduct that is still perpetuated and repeated, both in

23  the State of California and nationwide.

24      196.   As a direct and proximate result of Defendants' unfair and deceptive

25  practices, the California State Class Members have suffered and will continue to suffer

26  actual damages.

27      197.   The California State Class requests that this Court enter such orders or

28  judgments as may be necessary to enjoin the Defendants from continuing its unfair,

1    unlawful, and/or deceptive practices, as provided in Cal. Bus. & Prof. Code § 17203;

2    and for such other relief set forth below.

3         198.   The California State Class also requests equitable and injunctive relief in

4    the form of Court supervision of Defendants' numerous recalls of the various Class

5    Vehicles, to ensure that all affected vehicles are recalled and that the recalls properly and

6    adequately cure the Ignition Switch Defect and the other Defects.

7    **FIFTH CLAIM FOR RELIEF**
     **Violation of the Song-Beverly Consumer Warranty Act for Breach of Implied**
8    **Warranty of Merchantability (California "Lemon Law")**
     **Cal. Civ. Code. §§ 1791.1 & 1792**
9    **(Brought on behalf of the California State Class)**

10

11        199.   This claim is brought on behalf of Plaintiffs and the California Statewide

12   Consumer Class against the Defendants.

13        200.   Plaintiffs hereby incorporate by reference the allegations contained in the

14   preceding paragraphs of this Complaint.

15        201.   The California State Class members who purchased or leased the Defective

16   Vehicles in California are "buyers" within the meaning of California Civil Code §

17   1791(b).

18        202.   The Defective Vehicles and Takata airbags are "consumer goods" within

19   the meaning of California Civil Code § 1791(a).

20        203.   Defendants are "manufacturers" of the Defective Vehicles and/or Takata

21   airbags within the meaning of Cal. Civ. Code § 1791(j).

22        204.   Defendants impliedly warranted to the California State Class that their

23   Defective Vehicles and/or Takata airbags were "merchantable" within the meaning of

24   Cal. Civ. Code§§ 1791.1(a) & 1792; however, the Defective Vehicles and/or Takata

25   airbags do not have the quality that a buyer would reasonably expect, and were therefore

26   not merchantable.

27        205.   California Civil Code § 1791.1(a) states:

28        "Implied warranty of merchantability" or "implied warranty that goods are
          merchantable" means that the consumer goods meet each of the following:

1    (1) Pass without objection in the trade under the contract description.

2    (2) Are fit for the ordinary purposes for which such goods are used.

3    (3) Are adequately contained, packaged, and labeled.

4
5    (4) Conform to the promises or affirmations of fact made on the container
     or label.
6

7        206.   The Defective Vehicles, other vehicles with Takata airbags, and/or Takata

8    airbags would not pass without objection in the automotive trade because of the dangers

9    and risks posed by the Takata airbags described herein, leading to an unreasonable

10   likelihood that airbag deployment malfunctions would cause serious bodily harm or

11   death to vehicle occupants.

12       207.   Because of the dangers and risks posed by the Takata airbags, the Defective

13   Vehicles are not safe to drive and thus not fit for ordinary purposes.

14       208.   The Defective Vehicles, other vehicles with Takata airbags, and/or Takata

15   airbags are not adequately labeled because the labeling fails to disclose the dangers and

16   risks posed by the Takata airbags. Defendants failed to warn about the dangerous safety

17   defects in and risks posed by the Defective Vehicles and/or Takata airbags.

18       209.   Defendants breached the implied warranty of merchantability by

19   manufacturing and selling Defective Vehicles containing Takata airbags and/or Takata

20   airbags that are susceptible to releasing deadly shrapnel upon deployment or other

21   malfunctions. These dangers and risks deprived the California State Class of the benefit

22   of their bargain and have diminished and depreciated the value of the Defective Vehicles

23   and other vehicles with Takata airbags.

24       210.   Notice of breach is not required because the California State Class members

25   did not purchase their automobiles and/or Takata airbags directly from Defendants.

26   Notice of breach would be futile given the shortages of replacement parts and

27   defendants' knowledge of the dangers and risks that breach the implied warranty of

28   merchantability.

211.   As a direct and proximate result of Defendants' breaches of their duties under California's Lemon Law, the California State Class members received goods whose dangerous condition substantially impairs their value to the California State Class members. The California Class has been damaged by the diminished value of the vehicles, the products' malfunctioning, and the non-use of their Defective Vehicles.

212.   Under California Civil Code §§ 1791.1(d) & 1794, the California State Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Defective Vehicles, or the overpayment or diminution in value of their Defective Vehicles.

213.   Under California Civil Code § 1794, the California State Class members are entitled to costs and attorneys' fees.

<div align="center">

**SIXTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**Cal. Com. Code. § 2314**
**(Brought on behalf of the California State Class)**

</div>

214.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

215.   Defendants are and were at all relevant times a merchant with respect to motor vehicles and/or airbags under California Commercial Code § 2104.

216.   A warranty that the Defective Vehicles, other vehicles with Takata airbags and/or Takata airbags were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

217.   These vehicles and/or airbags, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used for the reasons specified above and below.

218.   Defendants were provided notice of these issues by their own knowledge of these issues, the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and members of the Class before or within a reasonable amount of time after Defendants issued the recalls and the allegations of vehicle and airbag dangers and defects became public.

<div align="center">

42
COMPLAINT

</div>

1    219.   Plaintiffs and Class members have had sufficient direct dealings with either

2    the Defendants or their agents (dealerships) to establish privity of contract between

3    Plaintiffs and the Class members, on one hand, and Defendants, on the other hand.

4    Notwithstanding this, privity is not required in this case because Plaintiffs and Class

5    members are intended third-party beneficiaries of contracts between the Defendants.

6    Specifically, they are the intended beneficiaries of Defendants' implied warranties. The

7    dealers were not intended to be the ultimate consumers of the Defective Vehicles and/or

8    Takata airbags and have no rights under the warranty agreements provided with the

9    Defective Vehicles; the warranty agreements were designed for and intended to benefit

10   the ultimate consumers only. Finally, privity is also not required because Plaintiffs' and

11   Class members' vehicles with Takata airbags are dangerous instrumentalities due to the

12   aforementioned dangers and risks posed by the Takata airbags.

13   220.   As a direct and proximate result of Defendants breach of the warranties of

14   merchantability, Plaintiffs and the California State Class have been damaged in an

15   amount to be proven at trial.

16   ### SEVENTH CAUSE OF ACTION
### Negligent Failure to Recall
17   ### (Brought on behalf of the California State Class)

18   221.   This claim is brought on behalf of Plaintiffs and the California Statewide

19   Consumer Class against Defendants.

20   222.   Plaintiffs hereby incorporate by reference the allegations contained in the

21   preceding paragraphs of this Complaint.

22   223.   Defendants knew or reasonably should have known that the Defective

23   Vehicles and/or the vehicles with the Takata airbags were dangerous and/or were likely

24   to be dangerous when used in a reasonably foreseeable manner for the reasons set forth

25   above and below.

26   224.   For the reasons set forth above and below, Defendants either knew of the

27   dangers posed by the Takata airbags before the vehicles and/or airbags were sold, or

28   became aware of them and their attendant risks after the vehicles and/or Takata airbags

were sold.  Defendants continued to gain information further corroborating the Takata airbag-related dangers, risks and defects until the present.

225.   Defendants failed to adequately recall the Defective Vehicles, vehicles with Takata airbags, and/or Takata airbags in a timely manner.

226.   Purchasers and lessors of the Defective Vehicles, including the California State Class, were harmed by Defendants' failure to adequately recall all the Defective Vehicles in a timely manner and have suffered damages, including, without limitation, damage to other components of the Defective Vehicles caused by the Takata airbag-related defects, the diminished value of the Defective Vehicles, the cost of modification of the dangerous and life-threatening Takata airbags, and the costs associated with the loss of use of the Defective Vehicles.

227.   Defendants' failure to timely and adequately recall the Defective Vehicles, vehicles with Takata airbags, and/or Takata airbags was a substantial factor in causing the purchasers' harm, including that of the California State Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

(a)   An order certifying the proposed Classes designating Plaintiffs as the named representatives of the Classes, and designating the undersigned as Class Counsel;

(b)   A declaration that the airbags in Defective Vehicles are defective;

(c)   A declaration that the Defendants are financially responsible for notifying all Class Members about the defective nature of the Defective Vehicles;

(d)   An order enjoining Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Defective Vehicles, and directing Defendants to permanently, expeditiously, and completely repair the Defective Vehicles to eliminate the defective airbags;

1     (e)   An award to Plaintiffs and Class Members of compensatory, exemplary,

2           and statutory penalties, damages, including interest, in an amount to be

3           proven at trial;

4     (f)   A declaration that the Defendants must disgorge, for the benefit of Plaintiff

5           and Class Members, all or part of the ill-gotten profits it received from the

6           sale or lease of the Defective Vehicles, or make full restitution to Plaintiffs

7           and Class Members;

8     (g)   An award of attorneys' fees and costs, as allowed by law;

9     (h)   An award of attorneys' fees and costs;

10    (i)   An award of pre-judgment and post-judgment interest, as provided by law;

11    (j)   Leave to amend this Complaint to conform to the evidence produced at trial

12          and such other relief as may be appropriate under the circumstances.

13                      **<u>DEMAND FOR JURY TRIAL</u>**

14 Plaintiffs request trial by jury on all issues so triable.

15                     Respectfully submitted,

16

17 Dated:  October 27, 2014    By:  <u>*/s/* Roland Tellis</u>
                                      Roland Tellis

18

19                     Roland Tellis (SBN 186269)
                    rtellis@baronbudd.com

20                     Mark Pifko (SBN 228412)
                    mpifko@baronbudd.com

21                     David Fernandes (SBN 280944)
                    dfernandes@baronbudd.com

22                     **BARON & BUDD, P.C.**
                    15910 Ventura Boulevard, Suite 1600

23                     Encino, California  91436
                    Telephone:  (818) 839-2333

24                     Facsimile:  (818) 986-9698

25

26                     J. Burton LeBlanc
                    **BARON & BUDD, P.C.**

27                     9015 Bluebonnet Blvd
                    Baton Rouge, LA 70810

28                     Tel: 225- 761-6463
                    Fax: 225-927-5449

**LABATON SUCHAROW LLP**
LAWRENCE A. SUCHAROW
CHRISTOPHER J. KELLER
MARTIS ALEX
ERIC J. BELFI
MICHAEL W. STOCKER
GREGORY S. ASCIOLLA
140 Broadway
New York, NY 10005
Tel: (212)-907-0700
Fax: (212)-818-0477
lsucharow@labaton.com
ckeller@labaton.com
malex@labaton.com
ebelfi@labaton.com
mstocker@labaton.com
gasciolla@labaton.com


**PODHURST ORSECK, P.A.**
Peter Prieto (FL Bar No. 501492)
John Gravante III (FL Bar No. 617113)
Matthew Weinshall (FL Bar No. 84783)
25 West Flagler Street, Suite 800
Miami, Florida 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com
jgravante@podhurst.com
mweinshall@podhurst.com


**GLANCY BINKOW & GOLDBERG**
MICHAEL M. GOLDBERG
1925 Century Park East ste 2100
Los Angeles, CA 90067
Tel:  310-201-9150
Fax:  310-201-9160
mgoldberg@glancylaw.com

*Counsel for Plaintiff and the Proposed Class*

COMPLAINT